## CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH

Rosanne D'Eramo Bell,
Administratrix of the
Estate of Lawrence R. Bell, III

v.

State Farm Automobile Ins. Co.

April 4, 1990

Case No. (Law) CL89-1099

By JUDGE THOMAS S. SHADRICK

This cause came to be heard upon motion of the plaintiff for summary judgment and upon motion of the defendant for summary judgment. All material facts were stipulated to by the parties, and the matter was argued by counsel.

On January 18, 1988, John Michael Carver, posing as a prospective buyer, took Dr. Lawrence Bell's automobile for a test drive with Dr. Bell in the passenger seat. While driving the vehicle, Carver produced a gun and shot Dr. Bell twice, killing him. Carver then disposed of Dr. Bell's body in a roadside ditch and stole the Bell vehicle. Subsequently, Carver was arrested and pleaded guilty to murder, abduction, and grand larceny.

Prior to instituting this suit, the plaintiff, administratrix of the Bell estate, filed a wrongful death action against Carver and State Farm Automobile Insurance Company. State Farm was dismissed as a party in accordance with Section 8.01-5(B) of the Code of Virginia. Although State Farm received notice of the suit pursuant to the Uninsured Motorist Statute, § 38.2-2206, State Farm decided not to defend the suit following an investigation of the claim. Evidence was heard *ore tenus*, and after argument of counsel,

judgment was entered for the plaintiff against Carver in the amount of $3,003,605.37 compensatory damages and $2,000,000.00 punitive damages. The judgment order, prepared by plaintiff's counsel and entered by the court, reads in part as follows:

> Whereupon, the pleadings, proceedings and orders; upon the evidence including testimony and exhibits and other incidents of trial as shown by the transcript and arguments of counsel, the court finds that:
> (1) John Michael Carver was responsible for the death of Lawrence W. Bell, deceased;
> (2) That the death was caused by the acts of John Michael Carver and arose out of the ownership, maintenance and use of Lawrence W. Bell, III's automobile;
> (3) That the death occurred in Virginia Beach, Virginia, while John Michael Carver was driving the automobile and Lawrence W. Bell, III, deceased, was occupying the vehicle.

The parties agree that Dr. Bell was an insured with State Farm at the time of his death and that the potential coverage on his vehicle under the uninsured motorist endorsement is $100,000.00. That endorsement reads in part as follows:

> The Company will pay, in accordance with Section 38.1-381 of the Code of Virginia and to all acts amendatory thereof or supplementary thereto, all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by the insured or property damage, caused by accident and arising out of the ownership, maintenance or use of such uninsured motor vehicle.

The plaintiff claims that Dr. Bell's death was caused by an accident which arose out of the ownership, maintenance, or use of an uninsured vehicle, and therefore, her

judgment against the uninsured operator, Carver, entitles her to receipt of $100,000.00 under Dr. Bell's uninsured motorist endorsement. She further contends that the defendant, State Farm, is collaterally estopped from denying that Dr. Bell's death was caused by an act which arose out of the ownership, maintenance, and use of an automobile. State Farm, on the other hand, denies that the policy in question affords any coverage and further denies that it is collaterally estopped from asserting that Dr. Bell's death was not caused by an accident arising out of the ownership, maintenance, or use of an uninsured motor vehicle.

The policy in question includes "death" in its definition of "bodily injuries." It further defines an "uninsured motor vehicle" as a motor vehicle to which there is an insurance policy applicable at the time of the accident, but the company writing the policy has denied coverage thereunder. Therefore, under the terms of the policy and the stipulated facts, it would appear that Dr. Bell was injured by the operator of an uninsured motor vehicle. In order for there to be coverage under the policy, then a determination must be made as to whether the injury was caused by an *accident* which arose out of the *ownership, maintenance, or use* of this uninsured motor vehicle.

Any question as to whether or not this occurrence was accidental should be viewed from the standpoint of the insured. The purpose of the uninsured motorist law is not to provide insurance for an uninsured motorist but to provide protection for the insured when he is the innocent victim of an uninsured motorist. *Horne v. Superior Life Insurance Co.*, 203 Va. 285, 123 S.E.2d 404 (1962). Therefore, on the one hand, the actions of a liable motorist may be intentional, thus causing denial of liability coverage; on the other hand, such actions are accidental from the view of the victim, thus giving rise to uninsured motorist coverage. *See Utica Mutual v. Travelers Indemnity*, 223 Va. 145, 147 (1982). Here, the event was for Dr. Bell unexpected and unforeseen and was, therefore, an accident under the terms of the uninsured motorist endorsement.

The only remaining determination then is whether this accident arose out of the ownership, maintenance, or use of the uninsured vehicle. The plaintiff contends that this issue has already been judicially determined

by the judgment order entered against John Michael Carver. In order for collateral estoppel to apply, however, the issue must not only have been actually litigated but also have been essential to a valid and final personal judgment in the first action. *See Bates v. Devers*, 214 Va. 667, 671 (1974). The issue of coverage afforded by Dr. Bell's automobile insurance policy was not before the court in the wrongful death action against Carver. State Farm was not obligated to defend Carver in that action and is not bound by any findings of the court if there is no coverage under the policy. *See Reisen v. Aetna Life and Casualty Co.*, 225 Va. 327, 302 S.E.2d 529 (1983).

The injury in this case clearly did not arise out of Carver's *ownership* or *maintenance* of the uninsured vehicle. The final inquiry then is did it arise out of his *use* of the vehicle. Even though use of the vehicle need not be the direct, proximate cause of the injury, nevertheless, there must be a causal relationship between the accident and employment of the motor vehicle as a vehicle. *State Farm Mutual Insurance Co. v. Powell*, 227 Va. 492, 500, 318 S.E.2d 393 (1984). In dealing with the accidental discharge of a shotgun sitting in the gun rack of a pick-up truck, the Virginia Supreme Court in *State Farm v. Powell* discussed five categories of cases wherein a firearm was involved in injuries directly or indirectly related to motor vehicles. Although the facts of the case at bar do not fit within any of the five categories, they are most analogous to the first category of cases involving accidental discharge of guns while the occupant of the vehicle was handling or toying with the weapon. The courts which have handled this type of case have uniformly held that there was no causal connection between the discharge of the guns and the use of the vehicles. They have stated "the vehicles were merely the 'situs' or 'locus' of any resultant injuries as discharge of the guns was unconnected with the inherent use of the vehicles." *Id*. at 499. A factual situation similar to the case at bar has been dealt with by the New Jersey Superior Court. *See Uzcatequi-Gaymon v. New Jersey Manufacturers Insurance Co.*, 193 N.J. Super. 71, 472 A.2d 163 (App. Div. 1984). There the insured decedent, while standing in a phone booth next to his car, was killed by persons attempting to rob him of his automobile. In holding that the death was not the

result of "an accident involving an automobile," the court stated:

> While theft of the automobile may have been the ultimate object of the attack, from a legal viewpoint, the automobile was not the cause of decedent's injuries and death. Rather, the cause of his injuries and death was the act of robbery committed by his assailants, 193 N.J. Super. at ---, 472 A.2d at 164.

In *O'key v. State Farm Mutual Automobile Insurance Co.*, 89 Mich. App. 526, 280 N.W.2d 583 (1979), the insured plaintiff was sitting in his parked car with the engine running when an assailant opened the passenger door, pointed a gun at him, and said "let's go home." The plaintiff was then shot as he attempted to put the car in gear. The Court of Appeals of Michigan found that the injury arose out of an "accident" but did not arise out of the ownership, operation, maintenance, or use of the automobile. The court stated that:

> The automobile was not the instrumentality of the injury. Rather, its role in this matter was incidental. *Id.* at 585.

Considering the foregoing factors, this court is of the opinion that the injury in this case was not causally connected with the use of the vehicle. A shooting is totally disassociated from the normal use of a vehicle. Here, the automobile may have been the object of the attack, but it was not the instrumentality of the injury. It played an incidental role in the entire matter. The death of plaintiff's decedent, therefore, was not caused by an accident arising out of the ownership, maintenance, or use of the vehicle in question.

Accordingly, the motion of the defendant for summary judgment on plaintiff's claim for uninsured motorist benefits is hereby granted, and plaintiff's motion for summary judgment is hereby denied.