193 N.J. Super. 71 (1984)
472 A.2d 163
MABEL UZCATEQUI-GAYMON AND JAMES UZCATEQUI-GAYMON, PLAINTIFFS-RESPONDENTS,
v.
NEW JERSEY MANUFACTURERS INSURANCE COMPANY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued January 24, 1984.
Decided February 3, 1984.
*72 Before Judges BOTTER and O'BRIEN.
Lanny S. Kurzweil argued the cause for appellant (McCarter & English, attorneys; John E. Flaherty of counsel; John E. Flaherty and Lanny S. Kurzweil on the brief).
Jean W. Billings argued the cause for respondents (Friedman, Carney & Wilson, attorneys; David A. Bolson on the brief).
The opinion of the court was delivered by BOTTER, P.J.A.D.
Defendant issued an automobile insurance policy to Christopher Uzcatequi-Gaymon, who was shot and killed on August 15, 1981, while using a public telephone. Plaintiffs brought this action to recover personal injury protection (PIP) benefits under that policy, including survivor's benefits and funeral and medical expenses. Plaintiffs assert that decedent was killed in the course of a robbery when he refused to surrender his car keys to his assailants. Plaintiffs allege that decedent was using a telephone at a Texaco gasoline station in Plainfield at 3:00 a.m. *73 when the assault occurred, that he had the keys to his car in his hand, and that his car was parked nearby. Holding that decedent was killed "as a result of an accident involving an automobile" within the meaning of N.J.S.A. 39:6A-4, the trial judge denied defendant's motion for summary judgment. We granted leave to appeal from the order denying the motion, and we now reverse.
The motion was presented to the trial judge on stipulated facts, most of which are contained in the first paragraph of this opinion. For the purpose of this appeal we assume that plaintiffs can prove that the car was parked next to the phone booth, that decedent had the car keys in his hand, that he was talking to his girlfriend over the telephone, that his automobile was very important to him, and that he was shot and killed by persons attempting to rob him of his car keys and his automobile. Nevertheless, in our view, while theft of the automobile may have been the ultimate object of the attack, from a legal viewpoint the automobile was not the cause of decedent's injuries and death. Rather, the cause of his injuries and death was the act of robbery committed by his assailants. That the automobile was the object of the robbery was merely an attending circumstance and did not transform this incident into "an accident involving an automobile" within the meaning of the New Jersey Automobile Reparation Reform Act (the no-fault law), N.J.S.A. 39:6A-1 et seq.
We have considered a number of cases relied upon by the parties and the trial judge. Among them are Vicari v. Nationwide Ins., 174 N.J. Super. 463 (App.Div. 1980), certif. den. 85 N.J. 464 (1980), and Sciascia v. American Ins. Co., 183 N.J. Super. 352 (Law Div. 1982), aff'd o.b. 189 N.J. Super. 236 (App.Div. 1983). In Vicari decedent was a passenger in an automobile insured by defendant. The vehicle was stopped in a line of traffic behind a jack-knifed tractor-trailer which had struck a pole and became entangled in a guy wire, blocking the roadway. Decedent left the car to render assistance. When he reached the rear of the trailer the guy wire was released and whipped out, striking *74 decedent and causing his fatal injuries. The court held the accident involved an automobile within the meaning of N.J.S.A. 39:6A-4 because decedent was involved in clearing the path of travel to permit the car he was in to proceed on its course. Decedent was involved solely in an effort to forward the progress of the vehicle he had been riding in. For that reason the injuries suffered by him in that effort were deemed to be an accident involving an automobile. On the other hand, in Sciascia the passenger in a moving uninsured automobile fired a shotgun that killed the owner of an automobile covered by insurance that included uninsured motorist coverage. This coverage insured against injury and death caused by an "accident... arising out of the ownership, maintenance or use of [an] uninsured ... automobile...." N.J.S.A. 17:28-1.1. The court held that the victim died as a result of an accident, but that there was no substantial connection between the use of the uninsured automobile and the injuries. In effect the court asserted that the real cause of the accident was the deliberate act of the passenger who fired the shotgun, and that the use of the car was merely incidental to the event. Sciascia v. American Ins. Co., supra at 358-359.[1]
In Westchester Fire Ins. Co. v. Continental Ins. Co., 126 N.J. Super. 29 (App.Div. 1973), aff'd o.b. 65 N.J. 152 (1974), the court held that injuries suffered by a bicyclist who was struck by a stick thrown by a passenger in a moving car arose out of the "ownership, maintenance or use" of an automobile within the meaning of an automobile insurance policy. The issue was whether the risk was covered by the automobile policy or by a homeowner's policy which excluded injuries caused by the "use of automobiles." The court held that coverage under the automobile *75 policy requires a "substantial nexus" between the injury and the use of the automobile. Id. at 38. The court noted that it was not uncommon for things to be thrown out of moving vehicles, so that coverage for injuries caused by such objects could be anticipated and expected by parties to the insurance contract.
In the case at hand we conclude that, although decedent's assailants may have attempted to rob him of the keys to his car, there was an insufficient causal connection between the shot fired by his attackers and the automobile to consider the killing an accident involving an automobile within the meaning of the New Jersey Automobile Reparation Reform Act as it existed in 1981. We note that N.J.S.A. 39:6A-4 has since been amended by L. 1983, c. 362, § 7 to substitute for the words "bodily injury as a result of an accident involving an automobile," the words "bodily injury as a result of an accident while occupying, entering into, alighting from or using an automobile...." The Legislature obviously intended more restrictive coverage than that afforded by the language "involving an automobile." This legislation appears to have been inspired by the holdings in Amiano v. Ohio Casualty Ins. Co., 85 N.J. 85 (1981) and Hoglin v. Nationwide Mut. Ins. Co., 144 N.J. Super. 475 (App.Div. 1976). In Amiano the court allowed recovery for injuries suffered by the driver of a truck which was involved in an accident with an automobile where the truck driver asserted PIP coverage as an insured under his wife's automobile policy. The insurance policy covering the truck did not provide PIP coverage, since the no-fault law applies only to automobiles. N.J.S.A. 39:6A-2. In Hoglin, a similar issue arose out of a collision between an automobile and a motorcycle. We cannot say that the Legislature intended a strict interpretation of N.J.S.A. 39:6A-4 prior to this amendment. The statute in its original form limited benefits to those who were injured "as a result of an automobile accident." L. 1972, c. 70, § 4. This was broadened by an amendment passed soon after its adoption, L. 1972, c. 203, § 3, to substitute the phrase "involving an automobile" for the term *76 "automobile accident." Thus, the Legislature by successive amendments has enlarged and contracted the class of accidents that are intended to be covered. We are satisfied, however, that the fatal injuries suffered by decedent in this case were never within the class intended by the Legislature to be covered by automobile insurance under any form of the statute.
We reverse the judgment below and enter judgment in favor of defendant.
NOTES
[1] For the purpose of this discussion we ignore the difference in terms used in N.J.S.A. 17:28-1.1 to define coverage for injuries caused by an uninsured motorist, namely, "accident ... arising out of the ownership, maintenance or use of such uninsured ... automobile" and the terms used in N.J.S.A. 39:6A-4, namely, "accident involving an automobile."