FELIX SMAUL, A/K/A EFIM SHMUYLOVICH, PLAINTIFF-RE-SPONDENT, v. IRVINGTON GENERAL HOSPITAL, MASOU MALEKZADEH, M.D., MASOUD MALIK, M.D., DR. RAYASAM: JOHN DOE AND RICHARD ROE (SAID NAMES BEING FICTI-TIOUS), DEFENDANTS, AND ALLSTATE INSURANCE COM-PANY, DEFENDANT-APPELLANT.

Argued March 2, 1987—Decided September 29, 1987.

*Richard P. Maggi* argued the cause for appellant (*McDermott, McGee & Ruprecht,* attorneys).

*Kenneth J. Fost* argued the cause for respondent.

PER CURIAM.

This appeal, pursuant to certification granted, 107 *N.J.* 49 (1986), challenges the Appellate Division's affirmance of the trial court's judgment that plaintiff is entitled to personal injury protection (PIP) benefits under his automobile insurance policy with defendant Allstate Insurance Company (Allstate). Plaintiff sustained injuries and damages when he was assaulted after stopping to ask directions of two pedestrians, who, in addition to beating plaintiff, took his money and attempted to steal his car. We affirm.

I

On April 21, 1983, plaintiff, Felix Smaul, was operating his automobile on Elizabeth Avenue, Irvington. According to the Statement of Facts of defendant Allstate (the other named defendants have not been involved in the appeal process, there being a final judgment under *Rule* 4:42–2 in respect of Allstate alone), plaintiff stopped his car to ask for directions. While plaintiff was seated in his vehicle, two men approached. One of them reached through the car window while the other pulled up the door-locking mechanism, whereupon they pulled plaintiff

out of his car. After stealing Smaul's cash, the assailants tried to take his auto. When plaintiff resisted, one of the men cut the victim on the forehead with a knife, requiring about 200 sutures, and broke his "ring" finger. The men fled when a passing car approached. Plaintiff was transported by ambulance to Irvington General Hospital, where he remained for one day.

When plaintiff sought PIP benefits from Allstate for injuries sustained and damages incurred as a result of this incident, Allstate refused payment, wherefore plaintiff commenced suit in the Law Division. On the parties' cross-motions for summary judgment the trial court denied Allstate's motion and granted summary judgment for plaintiff. The Appellate Division affirmed, 209 *N.J.Super.* 592 (1986).

## II

Defendant's petition for certification asserts that the Appellate Division's determination conflicts with other decisions of that court involving the right to recover PIP benefits for damages resulting from an assault and battery. The heart of Allstate's contention is that Smaul did not, in the language of the PIP statute, "sustain[ ] bodily injury as a result of an accident involving an automobile * * *." *N.J.S.A.* 39:6A-4. That was the statutory expression in effect at the time the policy in question was issued and at the time of this occurrence (the parties appear to agree that the policy language tracks the statute), although the statute has since been amended to refer to "bodily injury as a result of an accident while occupying, entering into, alighting from or using an automobile * * *."

The Appellate Division, after first noting that there was no disagreement about the incident being an "accident" within the meaning of the statute, concluded that "[i]n a literal sense" the assault surely "involved an automobile, since it was the site of the assault," 209 *N.J.Super.* at 594, but went on to observe that "the question remains whether in a practical sense the automo-

bile was merely an attending circumstance * * * unrelated to the assault or whether it had a sufficient nexus to the assault to come within the statute." *Ibid.* The reference in the opinion of the court below to "attending circumstance" came from *Uzcatequi-Gaymon v. New Jersey Manufacturers Insurance Co.,* 193 *N.J.Super.* 71 (App.Div.1984), in which a driver who parked his automobile near a public telephone was killed in the course of a robbery when he refused to surrender his car keys to his assailants. *Id.* at 72. In a suit by his survivors to recover PIP benefits the court held that although the theft of the vehicle may have been the "ultimate object of the attack," *id.* at 73, from a legal viewpoint the cause of decedent's injuries and death was not the automobile but rather was the act of robbery committed by his assailants. *Ibid.* The *Uzcatequi-Gaymon* court viewed the fact that the automobile was the object of the robbery as no more than an "attending circumstance." *Ibid.* The vehicle "did not transform this incident into 'an accident involving an automobile' within the meaning of the [no-fault law]." *Ibid.*

The Appellate Division in this case recognized the distinction drawn in *Uzcatequi-Gaymon* between "incidents [that] involved the use of an automobile" and "those in which the automobile, though present, was not being used in a sense [that] was meaningful to the remedial purposes of PIP benefits." 209 *N.J.Super.* at 594. It acknowledged that if causal connection "in a narrow sense" between the accident and the automobile is the appropriate test, then Smaul's injuries "cannot be said to have resulted from an accident involving an automobile within the meaning of the statute," *id.* at 595; but it found the statutory test satisfied by resort to the long-standing doctrine that "the insurance policy does not require that the injury be directly or proximately caused by the automobile itself or by its motion or operation," *ibid.* (citing *Westchester Fire Ins. Co. v. Continental Ins. Co.,* 126 *N.J.Super.* 29, 37 (App.Div.1973), aff'd o.b., 65 *N.J.* 152 (1974)), and by the principle that there need be only a substantial nexus between the injury and the use

of the car. *Ibid.* (citing *Westchester,* 126 *N.J.Super.* at 38). The Appellate Division found that nexus. We agree with that court's treatment of the pertinent authorities, with its conclusion favoring coverage, and with the reasoning by which it arrived at that conclusion, as supplemented herein.

Central to the result reached by both courts below is the concept that the act that causes the injury, although not foreseen or expected, nevertheless be, in the contemplation of the parties to the insurance contract, a "natural or reasonable incident or consequence of the use of the automobile, and thus a risk against which they might reasonably expect those insured under the policy would be protected." *Westchester Fire Ins. Co. v. Continental Ins. Co., supra,* 126 *N.J.Super.* at 28. As observed by the Appellate Division, "[i]t is an unfortunate truth that in these times the sort of attack to which plaintiff was subjected is not uncommon," 209 *N.J.Super.* at 596—that is, as stated by the trial court, "it is foreseeable that a driver of a car will, at times, stop for directions while operating his vehicle and that in doing so he may be injured as a result of an assault by another." *Ibid.*

Although the fact that Smaul stopped for directions and remained seated in his car, hence directly involving the use of his automobile, serves to distinguish this case from *Uzcatequi-Gaymon,* we need not rest on that feature alone to find liability for PIP benefits in this case. Here there was direct involvement of the automobile in the accident: plaintiff sought directions so that he could drive his car to his destination, he was sitting in his car when the assault occurred, and a purpose of the assailants—not emphasized by either court below but acknowledged in Allstate's Statement of Facts—was to steal the car after yanking plaintiff out of the driver's seat. The effort to take the automobile removes, for us, any doubt about this case falling within the statutory requirement of an "accident involving an automobile." Surely the automobile was not merely coincidental to the critical events or a mere "attending circumstance": its role was central to the incident. We see no

reason rooted in either public policy or statutory interpretation why the fact that a criminal act was involved in the accident should deprive this plaintiff of PIP benefits.

Judgment affirmed.

*For affirmance* —Chief Justice WILENTZ, and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*Opposed*—None.