238 N.J. Super. 572 (1990)
570 A.2d 464
DENISE A. VASIL, INDIVIDUALLY AS ADMINISTRATRIX OF THE ESTATE OF DANIEL VASIL, DECEASED, AND AS GUARDIAN AD LITEM OF SARAH VASIL AND JONATHAN VASIL, INFANTS, PLAINTIFF-APPELLANT,
v.
CARMEN ZULLO, IDEAL MOBILE HOME PARK, INC., AND IDEAL HOME SALES, INC., FOREMOST INSURANCE CO., AND NEW JERSEY MANUFACTURERS INSURANCE COMPANY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued January 22, 1990.
Decided February 16, 1990.
*574 Before Judges J.H. COLEMAN and SKILLMAN.
Donald E. Morrice argued the cause for appellant.
Richard L. Ravin argued the cause for respondents Carmen Zullo, Ideal Mobile Home Park, Inc., Ideal Home Sales, Inc. and Foremost Insurance Co. (Budd, Larner, Gross, Picillo, Rosenbaum, Greenberg & Sade, attorneys; Richard L. Ravin, on the brief).
Carol M. Romano argued the cause for respondent New Jersey Manufacturers Insurance Company (Connell, Foley & Geiser, attorneys; Linda A. Palazzolo, of counsel; Carol M. Romano, on the brief).
The opinion of the court was delivered by SKILLMAN, J.A.D.
This case involves claims for personal injury protection (PIP), N.J.S.A. 39:6A-4, and uninsured motorist (UM), N.J.S.A. 17:28-1.1, benefits arising out of a homicide. The decedent, Daniel Vasil, was a passenger in a vehicle operated by Carmen Zullo. The two men had attended a hockey game at the Meadowlands Arena on the evening of December 11, 1985. As they were starting their trip home Zullo made a U-turn on Paterson Plank Road, ending up on the shoulder of the roadway heading west. The driver of a small Toyota truck apparently felt that Zullo *575 had cut him off. Consequently, he pulled his vehicle next to Zullo's vehicle, thereby blocking Zullo's entry onto the main line of traffic. The occupants then exchanged obscenities from within their vehicles. Next, Vasil jumped out of the Zullo vehicle and walked around to the driver's side of the Toyota. Zullo lost sight of him at this time. A few moments later, Vasil returned. As he sat back down in his seat, Vasil began to exhibit signs of severe physical distress and subsequently died without relating to Zullo what had happened while he was outside the vehicle. An autopsy revealed that his death had been caused by a stabbing. The Toyota departed from the scene without Zullo taking note of its license number and neither the vehicle nor its occupants were ever identified.
This lawsuit was brought by the decedent's wife, as administratrix of his estate and guardian ad litem of their minor children, seeking recovery of PIP and UM benefits against both New Jersey Manufacturers Insurance Company (NJM), which had issued an automobile liability policy to Vasil, and Foremost Insurance Company (Foremost), which had issued an automobile policy to Ideal Mobile Home Park, Inc., the owner of the car operated by Zullo.[1] After the expiration of the period for discovery, NJM moved for summary judgment. The trial court issued an oral opinion on November 10, 1988 rejecting all of plaintiff's claims for PIP and UM benefits and subsequently entered summary judgments in favor of all defendants.
Plaintiff appeals from the dismissal of her claims for PIP and UM benefits as against both NJM and Foremost. We affirm.

I
To qualify for PIP benefits, a person must have been injured "as a result of an accident while entering into, alighting *576 from or using an automobile, or as a pedestrian, being struck by an automobile or by an object propelled by or from an automobile." N.J.S.A. 39:6A-4. This test of eligibility for PIP benefits was introduced by way of a 1983 amendment to the PIP statute, L. 1983, c. 362, § 7, which previously had required the payment of PIP benefits to any named insured "who sustained bodily injury as a result of an accident involving an automobile."
The cases relied upon by plaintiff to establish her entitlement to PIP benefits were all decided under N.J.S.A. 39:6A-4 as it read prior to the 1983 amendment. See, e.g., Smaul v. Irvington General Hospital, 209 N.J. Super. 592, 594, 508 A.2d 1147 (App.Div. 1986), aff'd 108 N.J. 474, 530 A.2d 1251 (1987); Pennsylvania Nat'l Mutual Casualty Ins. Co. v. Miller Est., 185 N.J. Super. 183, 186, 447 A.2d 1344 (App.Div. 1982); Vicari v. Nationwide Ins., 174 N.J. Super. 463, 465, 416 A.2d 977 (App. Div. 1980), certif. den. 85 N.J. 464, 427 A.2d 562 (1980). However, the cases construing the 1983 amendment have uniformly recognized that its intent was to constrict the reach of PIP coverage recognized under prior case law. See, e.g., Ingraham v. Travelers Companies, 217 N.J. Super. 126, 129, 524 A.2d 1319 (App.Div. 1987), aff'd o.b. 110 N.J. 67, 539 A.2d 733 (1988); Uzcatequi-Gaymon v. New Jersey Manufacturers Ins. Co., 193 N.J. Super. 71, 75, 472 A.2d 163 (App.Div. 1984); JFK Memorial Hospital v. Kendal, 205 N.J. Super. 456, 458-459, 501 A.2d 197 (Law Div. 1985). This intent was made clear in the introductory statement to Assembly Bill 3981, which was later enacted as chapter 362 of the Laws of 1983:
These provisions mainly are designed to tighten statutory eligibility requirements for personal injury protection coverage so as to comport with the original intent of the no-fault law.
We believe that this case involves the kind of circumstances which the Legislature intended to exclude from PIP coverage by the 1983 amendment to the law.
Although we assume without deciding that the stabbing of Vasil by one of the occupants of the Toyota was an "accident" *577 within the intent of N.J.S.A. 39:6A-4, see Pennsylvania Nat'l Mutual Casualty Ins. Co. v. Miller Est., supra; Sciascia v. American Ins. Co., 183 N.J. Super. 352, 355-357, 443 A.2d 1118 (Law Div. 1982), aff'd 189 N.J. Super. 236, 459 A.2d 1198 (App. Div. 1983), we conclude that the stabbing did not occur while he was "occupying, entering into, alighting from or using an automobile." Rather, it occurred after Vasil had voluntarily gotten out of the Zullo car and walked around the front of the Toyota to speak with its occupants. See Clyburn v. Liberty Mutual Ins. Co., 214 N.J. Super. 644, 647, 520 A.2d 829 (App. Div. 1987), certif. den. 107 N.J. 652, 527 A.2d 471 (1987) ("If a person is not in an automobile, he is not occupying it in the statutory sense").
We are also satisfied that Vasil cannot reasonably be said to have been "using" the Zullo vehicle simply because the altercation with the occupants of the Toyota arose out of the operation of Zullo's car or because the Toyota was blocking the Zullo vehicle's path. A non-occupant of a vehicle may be found to have been "using" the vehicle in which he was riding or driving while examining the damage sustained in an accident or while pushing the vehicle from the roadway to the shoulder. Id. at 648-649, 520 A.2d 829. Such conduct constitutes normal use of an automobile which has been involved in an accident or has broken down. In contrast, a verbal or physical confrontation with the occupants of another vehicle is not part of the normal use of an automobile.
We also conclude that Vasil's injuries did not qualify for the PIP benefits available to a pedestrian. The award of PIP benefits for injuries occurring while the insured was a pedestrian is limited to an accident "caused by an automobile or by an object propelled by or from an automobile." N.J.S.A. 39:6A-4; see Darel v. Pennsylvania Manufacturer's Ins. Co., 220 N.J. Super. 156, 531 A.2d 767 (App.Div. 1987). Vasil was clearly not struck by an automobile. And while it would be theoretically possible for a stabbing injury to be caused by a knife or other *578 sharp instrument "propelled" from an automobile, plaintiff presented no evidence from which it could be inferred that this is how Vasil's injury occurred.

II
Any policy of automobile liability insurance issued in this state is required to include uninsured motorist coverage. N.J.S.A. 17:28-1.1; N.J.S.A. 39:6A-14. This coverage must extend to any "bodily injury ... sustained by the insured, caused by accident and arising out of ownership, maintenance or use of [an] uninsured or hit and run motor vehicle." N.J.S.A. 17:28-1.1a.
We held in Sciascia v. American Insurance Co., supra, and Cerullo v. Allstate Ins. Co., 236 N.J. Super. 372, 565 A.2d 1125 (App.Div. 1989) that an intentional assault committed by an occupant of an uninsured or hit and run vehicle does not "arise out of the ownership, maintenance or use" of the vehicle. In Sciascia, a passenger in an uninsured vehicle fired a shotgun which killed a person who was standing next to his parked car. In denying UM coverage, the court said:
The deliberate firing of a shotgun by the passenger Stires from a moving vehicle with the knowledge of  and participation and assistance by  the driver Counterman, cannot be considered to have arisen out of the use of Counterman's vehicle. There was no substantial connection between the insured's death and the use of the uninsured automobile by Counterman and Stires. [183 N.J. Super. at 358-359, 443 A.2d 1118].
In Cerullo, plaintiff was cut off by an unidentified vehicle. When both cars stopped at the next intersection, a passenger got out of the unidentified vehicle, walked over to plaintiff's vehicle and punched him in the eye through an open window. In holding that plaintiff was not eligible for UM benefits for his resulting injuries, we said:
The coverage required by N.J.S.A. 17:28-1.1 protects an injured party who does not have recourse against an automobile liability insurance policy. Automobile liability insurance would not provide coverage for an intentional criminal act, because "all or virtually all" auto liability policies contain exclusions for intentionally caused harm.... Thus, if UM coverage applies to injuries sustained through an intentional criminal attack effected through an instrumentality *579 (in this case a fist) other than an automobile, then UM coverage, conceived as a first party substitute for third party liability coverage, would provide substantially greater protection than the third party coverage it replaces.
We do not suggest that UM and automobile liability coverages are perfectly symmetrical, but we perceive no legislative intent to to establish UM coverage as a form of general crime insurance based on an indirect nexus between an automobile and the criminal act. [236 N.J. Super. at 377-378, 565 A.2d 1125; (citations omitted)].
See also Kough v. New Jersey Automobile Full Insurance Underwriting Ass'n, 237 N.J. Super. 460, 568 A.2d 127, 132-33 (App.Div. 1990).
The principles set forth in Sciascia and Cerullo compel us to affirm the denial of UM benefits. Although the details of the stabbing of Vasil are unknown, the circumstances leave no doubt that he was the victim of an assault by one or more of the occupants of the Toyota. If the perpetrators of the assault had been apprehended and the operation of the Toyota was covered by insurance, the standard policy exclusion for "intentional acts" would have precluded plaintiff from obtaining recovery from the insurer of the Toyota. Since UM coverage is designed essentially as a substitute for the insurance coverage which the owner of an uninsured or hit and run vehicle would have been required to maintain, UM coverage does not extend to the homicide committed by one of the occupants of the Toyota.
Affirmed.
NOTES
[1] The complaint also named Carmen Zullo, Ideal Mobile Home Park, Inc. and Ideal Home Sales, Inc. as defendants. Plaintiff does not challenge the dismissal of her complaint as against these defendants.