635 A.2d 559

KURT LINDSTROM, BY HIS G/A/L GEORGE K. LINDSTROM AND GEORGE K. LINDSTROM, INDIVIDUALLY, PLAINTIFFS–APPELLANTS, v. THE HANOVER INSURANCE COMPANY ON BEHALF OF THE NEW JERSEY AUTOMOBILE FULL INSURANCE UNDERWRITING ASSOCIATION, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued October 20, 1993—Decided December 28, 1993.

Before Judges R.S. COHEN, D'ANNUNZIO and WALLACE.

*Patricia D. Connelly* argued the cause for appellants (*Shebell & Schibell,* attorneys; *Ms. Connelly,* on the brief).

*Mark S. Hochman* argued the cause for respondent (*Gertler & Hanna,* attorneys; *Mr. Hochman,* on the brief).

The opinion of the court was delivered by

D'ANNUNZIO, J.A.D.

Kurt Lindstrom was rendered a quadriplegic as the result of a gunshot wound. The bullet was fired from within an automobile as it drove past a crowd, which included Lindstrom, attending an outdoor party. At oral argument, each party conceded that the firing of the weapon was an intentional criminal act and that the perpetrator was apprehended and successfully prosecuted. Kurt Lindstrom now appeals from a judgment denying him personal injury protection benefits under an automobile insurance policy issued by defendant Hanover Insurance Company. We affirm.

*N.J.S.A.* 39:6A–4 defines eligibility for personal injury protection (PIP) benefits. It provides for benefits

without regard to negligence, liability or fault of any kind, to the named insured and members of his family residing in his household who sustained bodily injury as a result of an accident while occupying, entering into, alighting from or using an automobile, *or as a pedestrian, caused by an automobile or by an object propelled by or from an automobile,* to other persons sustaining bodily injury while occupying, entering into, alighting from or using the automobile of the named insured, with the permission of the named insured, and to pedestrians, sustaining bodily

injury caused by the named insured's automobile or struck by an object propelled by or from such automobile. (Emphasis added.)

As an insured under defendant's policy, Lindstrom was a covered pedestrian. Thus, he is entitled to benefits if his gunshot injuries were "caused by an automobile or by an object propelled by or from an automobile," within the meaning of the PIP statute. The trial court ruled that the nexus between the injury and the automobile was insufficient to bring the loss within PIP coverage.

We have addressed the application of PIP coverage to injuries caused by criminal acts in several cases arising before and after the 1983 amendments to *N.J.S.A.* 39:6A–4.

In *Morgan v. Prudential Ins. Co.*, 242 *N.J.Super.* 638, 577 *A.2d* 1300 (App.Div.), *certif. denied*, 122 *N.J.* 370, 585 *A.2d* 377 (1990), decedent's husband shot her to death as she sat in the driver's seat of her car. We affirmed the denial of PIP coverage because we concluded "that there was no legal nexus between the shooting and the kind of risk" covered by an automobile policy. *Id.* 242 *N.J.Super.* at 641, 577 *A.2d* 1300.

Similarly, *Vasil v. Zullo*, 238 *N.J.Super.* 572, 570 *A.2d* 464 (App.Div.1990), involved the stabbing death of a passenger who had left the automobile in which he was riding to confront the occupants of another vehicle regarding a traffic dispute. We affirmed the denial of PIP benefits and uninsured motorist coverage. We concluded that the "stabbing did not occur while he was 'occupying, entering into, alighting from or using an automobile'" and, therefore, non-pedestrian PIP coverage did not apply. We also concluded that pedestrian coverage was not applicable because the injury was not caused by an automobile. We further observed that there was no evidence that decedent was killed by an object propelled from an automobile. *Id.* at 577–78, 570 *A.2d* 464.

We also denied PIP coverage to the plaintiff in *Uzcatequi–Gaymon v. N.J. Mfrs. Ins. Co.*, 193 *N.J.Super.* 71, 472 *A.2d* 163 (App.Div.1984). Plaintiffs' decedent was shot and killed during an attempted robbery of his car keys and car. At the time of the

shooting, decedent was in a phone booth with his car keys in his hand and his car parked nearby. We ruled that "while theft of the automobile may have been the ultimate object of the attack, from a legal viewpoint the automobile was not the cause of decedent's injuries and death." *Id.* at 73, 472 *A.*2d 163. We observed that the automobile "was merely an attending circumstance." *Ibid.*

In *Sciascia v. American Ins. Co.,* 183 *N.J.Super.* 352, 443 *A.*2d 1118 (Law Div.1982), *aff'd o.b.,* 189 *N.J.Super.* 236, 459 *A.*2d 1198 (App.Div.1983), Judge Stein, sitting in the Law Division, denied uninsured motorist benefits for a death arising out of a drive-by shooting, ruling that "[t]here was no substantial connection between the insured's death and the use of the uninsured automobile" by the perpetrators. *Id.* 183 *N.J.Super.* at 359, 443 *A.*2d 1118. Judge Stein stated:

> More specifically, this unfortunate occurrence, although unforeseen and unexpected by decedent insured, was not one which, in the contemplation of the parties to the UM contract, was a natural and probable incident or consequence of the use of an automobile by an uninsured motorist. It was not a risk against which the insurer and the insured might reasonably expect that protection would be afforded under a policy providing uninsured motorist coverage.

> *[Ibid.]*

*See also Cerullo v. Allstate Ins. Co.,* 236 *N.J.Super.* 372, 565 *A.*2d 1125 (App.Div.1989) (uninsured motorist benefits not available for injuries resulting from an assault on insured by another motorist).

"Central" to the coverage issue in this case "is the concept that the act that causes the injury, although not foreseen or expected, nevertheless be, in the contemplation of the parties to the insurance contract, a 'natural or reasonable incident or consequence of the use of the automobile, and thus a risk against which they might reasonably expect those insured under the policy would be protected.'" *Smaul v. Irvington General Hosp.,* 108 *N.J.* 474, 478, 530 *A.*2d 1251 (1987) (quoting *Westchester Fire Ins. Co. v. Continental Ins. Co.,* 126 *N.J.Super.* 29, 38, 312 *A.*2d 664 (App. Div.1973), *aff'd o.b.,* 65 *N.J.* 152, 319 *A.*2d 732 (1974).

The plaintiff in *Smaul* was injured when he stopped his automobile to ask for directions. While seated in the vehicle, two men approached him. The men dragged Smaul out of his car, stole his cash and tried to take the vehicle. When Smaul resisted, one of the assailants cut Smaul with a knife and broke his ring finger. *Id.* 108 *N.J.* at 475–76, 530 *A.*2d 1251. In affirming this court's determination that Smaul was entitled to PIP benefits, the Supreme Court stated:

> Although the fact that Smaul stopped for directions and remained seated in his car, hence directly involving the use of his automobile, serves to distinguish this case from *Uzcatequi–Gaymon,* we need not rest on that feature alone to find liability for PIP benefits in this case. Here there was direct involvement of the automobile in the accident: plaintiff sought directions so that he could drive his car to his destination, he was sitting in his car when the assault occurred, and a purpose of the assailants—not emphasized by either court below but acknowledged in Allstate's Statement of Facts—was to steal the car after yanking plaintiff out of the driver's seat. The effort to take the automobile removes, for us, any doubt about this case falling within the statutory requirement of an "accident involving an automobile." Surely the automobile was not merely coincidental to the critical events or a mere "attending circumstance": its role was central to the incident. We see no reason rooted in either public policy or statutory interpretation why the fact that a criminal act was involved in the accident should deprive this plaintiff of PIP benefits.

[*Id.* at 478–79, 530 *A.*2d 1251.]

*Smaul* is distinguishable from the present case. *Smaul* did not involve pedestrian coverage. The PIP coverage at issue was that of the named insured under statutory language which preceded the 1983 amendments. In *Smaul,* plaintiff was covered for injuries resulting from "an accident involving an automobile." *L.* 1972, *c.* 203, § 4; *Smaul, supra,* 108 *N.J.* at 476, 530 *A.*2d 1251.

■ In the present case, pedestrian coverage is at issue and coverage applies if plaintiff sustained injuries "caused by an automobile or by an object propelled by or from an automobile." *N.J.S.A.* 39:6A–4. Lindstrom's injury was not caused by an automobile, and it was not caused by an object propelled *by* an automobile. The contention that the bullet was propelled *from* the automobile has a surface appeal, but it is a flawed contention. The flaw is the fact that the offending instrument was a firearm

from which the bullet was propelled. That central fact attenuates the connection between the automobile and the injury. The gunman could just as well have been on foot, or on a motorcycle or a bicycle. Thus, unlike *Smaul,* the automobile's role was not "central to the incident." *Smaul, supra,* 108 *N.J.* at 478, 530 *A.*2d 1251.

Moreover, we are persuaded that coverage for a deliberate shooting of a pedestrian was not "in the contemplation of the parties to the insurance contract." *Ibid.* We are also persuaded that the Legislature did not intend to burden payees of automobile insurance premiums with the costs of criminal acts in the absence of a substantial nexus between the automobile and the criminal act, as occurred in *Smaul.*[1]

Affirmed.

---

[1] The connection between an attempted auto theft and plaintiff's injuries resulted in PIP coverage in *Smaul.* We note that a common element of auto insurance policies is indemnity for loss sustained as a result of the theft of a covered auto.