709 A.2d 1359

DAVID STEVENSON,[1] PLAINTIFF–APPELLANT, v. STATE FARM INDEMNITY COMPANY, DEFENDANT–THIRD–PARTY PLAINTIFF–RESPONDENT, v. UNSATISFIED CLAIM AND JUDGMENT FUND, THIRD–PARTY DEFENDANT.

JOHN PONTER, JR.,[1] PLAINTIFF–RESPONDENT, v. PRUDENTIAL PROPERTY AND CASUALTY INSURANCE COMPANY, DEFENDANT–THIRD–PARTY PLAINTIFF–APPELLANT, v. UNSATISFIED CLAIM AND JUDGMENT FUND, THIRD–PARTY DEFENDANT.

Superior Court of New Jersey
Appellate Division

Argued March 18, 1998—Decided May 14, 1998.

---

[1] These two appeals are consolidated on the court's motion for purposes of opinion.

Before Judges KING, MUIR, Jr. and KESTIN.

*Howard A. Gross,* argued the cause for appellant in A–2861–96T5 (*Gross and Gross,* attorneys; *Mr. Gross,* on the brief).

*Randi S. Greenberg,* argued the cause for appellant in A–4332–96T2 (*Robert A. Auerbach,* attorney; *Ms. Greenberg,* on the brief).

*Elizabeth C. Chierici,* argued the cause for respondent in A–2861–96T5 (*Chierici, Chierici & Smith,* attorneys; *Ms. Chierici,* on the brief).

*Milton W. Brown,* argued the cause for respondent in A–4332–96T2.

The opinion of the court was delivered by

KING, P.J.A.D.

## I

The issue in this appeal is whether an insurance carrier must provide personal injury protection (PIP) benefits, pursuant to *N.J.S.A.* 39:6A–4,[2] to claimants who sustained bodily injuries

---

[2] In pertinent part *N.J.S.A.* 39:6A–4 states:

**Personal injury protection coverage, regardless of fault.**

Every automobile liability insurance policy, issued or renewed on or after January 1, 1991, insuring an automobile as defined in section 2 of P.L.1972, c. 70 (C. 39:6A–2) against loss resulting from liability imposed by law for bodily injury, death and property damage sustained by any person arising out of ownership, operation, maintenance or use of an automobile shall provide personal injury protection coverage, as defined hereinbelow, under provisions approved by the Commissioner of Insurance, for the payment of benefits without regard to negligence, liability or fault of any kind, to the named insured and members of his family residing in his household *who sustained bodily injury as a result of an accident while occupying, entering into, alighting from or using an automobile,* or as a pedestrian, caused by an automobile or by an object propelled by or from an automobile, to other persons sustaining bodily injury while occupying, entering into, alighting from or using the automobile of the named insured, with the permission of the named insured, and to pedestrians, sustaining bodily injury caused by

during assaultive carjacking incidents. The appeal concerns two consolidated cases which arise from similar factual patterns—the assailants shot the drivers while both drivers occupied their cars. We conclude that these cases fulfill the requisites for coverage: "bodily injury as a result of an accident sustained while occupying an automobile," within the interpretation of *Lindstrom v. Hanover Ins. Co.*, 138 *N.J.* 242, 247, 649 *A.*2d 1272 (1994) (4–3 decision), and *Smaul v. Irvington Gen. Hosp.*, 108 *N.J.* 474, 478, 530 *A.*2d 1251 (1987).

 While we conclude that plaintiffs, victims of the two carjacking incidents, are entitled to PIP coverage under the circumstances of these assaults in their vehicles, we cannot decide on this record if the statutory defense of criminal participation in *N.J.S.A.* 39:6A–7 is available to the defendant insurance carriers, State Farm Indemnity Company and Prudential Property and Casualty Company. On this issue, we remand for further consideration.

## II

*Ponter v. Prudential Property & Casualty, A–4332–96T2*

About 6:30 p.m. on November 27, 1994 plaintiff Ponter drove his mother's 1985 Chevrolet Blazer from his home in Paulsboro into the City of Camden to buy marijuana. He was alone. Prudential insured the family automobile under the name of his mother, Bessie Ponter.

Ponter had been to Camden previously to buy drugs. He knew where to go. He proceeded to a stop sign at an unknown intersection and bought a bag of marijuana for $10 from an individual who approached his car for that purpose. Ponter then intended to return home.

Ponter testified at his deposition that after he drove about a block, a young male jumped into the car and asked for a ride

---

the named insured's automobile or struck by an object propelled by or from such automobile. [Emphasis supplied.]

home. The young male asked Ponter why he came to Camden. Ponter replied that he had purchased marijuana. The male offered to get Ponter a bigger bag even though Ponter had no more money. Ponter then drove with the male to 780 Sycamore Street. The male left the car on the passenger's side and went into an apartment.

Ponter waited inside his car for several minutes. The male then reentered Ponter's car on the front passenger's side and put "two little, green bags" into Ponter's hand. Ponter then realized the bags contained cocaine or crack. He said he did not want them. The male never spoke to Ponter. After adjusting himself in the car seat so that he faced Ponter, the male pulled out a gun and fired three shots into Ponter's head. Two witnesses reported seeing the male suspect drive the vehicle away from the scene at a high rate of speed.

At 8:53 p.m. police responded to a report of an overturned vehicle at 8th and Sycamore Streets in Camden. While en route, residents reported a male (Ponter), bleeding from the head, lying in the street on the corner of 8th and Warnock Streets, about one-half block from the overturned vehicle. Ponter was taken to the Trauma Center at Cooper Medical Center with serious injuries. His urine screen tested positive for cocaine and opiates. He later was transferred to McGee Rehabilitation Center in Philadelphia for treatment of brain injuries.

After excellent investigative work, on March 13, 1995 the Camden police arrested A.K., a juvenile who attended Camden High School. Police initially charged A.K., age sixteen, as a juvenile with: carjacking, contrary to *N.J.S.A.* 2C:15-2; criminal attempt (murder), contrary to *N.J.S.A.* 2C:5-1; aggravated assault, contrary to *N.J.S.A.* 2C:12-1b(1); and unlawful possession of a firearm, contrary to *N.J.S.A.* 2C:39-5b. A.K. pled guilty to the juvenile charges of carjacking and attempted murder; the other two charges were merged with the more serious crimes. On August 28, 1995 the Family Court judge sentenced A.K. to the

Youth Reception Center at Jamesburg for an indeterminate term not to exceed eight years.

On April 17, 1995 Ponter filed a complaint against Prudential seeking to recover PIP benefits. Prudential filed a motion for summary judgment and plaintiff filed a cross-motion for summary judgment. On March 10, 1997 the Law Division judge denied Prudential's summary judgment motion and granted Ponter's cross-motion, ordering payment of PIP benefits. However, the Law Division judge did not consider the applicability of the statutory exclusion pertinent to criminal activity, *N.J.S.A.* 39:6A-7(a)(1).[3]

### III

*Stevenson v. State Farm, A–2861–96T5*

On July 16, 1995 plaintiff David Stevenson borrowed his father's automobile, a 1994 Plymouth, which was insured by State Farm. At his deposition, Stevenson testified that he drove from his home in Clementon in suburban Camden County into the City of Camden to play tennis on courts located across from Woodrow Wilson High School. Stevenson arrived at the tennis courts at about 6 p.m. He had not made prior arrangements to meet anyone on the courts because he had many friends there and usually found someone to play tennis with him. Stevenson said he played doubles and singles matches but could not recall the names of the other players.

After he finished playing tennis at about 10 p.m., Stevenson testified that he got into his car and drove west on Federal Street to Broadway in downtown Camden. At about 10:30 p.m. he

---

[3] *N.J.S.A.* 39:6A–7(a)(1) states:

 a. Insurers may exclude a person from benefits under section 4 and section 10 where such person's conduct contributed to his personal injuries or death occurred in any of the following ways:

 (1) while committing a high misdemeanor or felony or seeking to avoid lawful apprehension or arrest by a police officer[.]

stopped for a soda at a convenience store near "Broadway Eddies" on Broadway. As Stevenson walked back to his car, a man approached him and asked for a ride to the Centerville area of Camden. Stevenson agreed to give him a ride, though he was a stranger, because Centerville was generally on his way home via Route 295. Stevenson said:

Q [by defense attorney]: Why did you give the guy a lift?

A: I was doing him a favor. He asked me for a ride. I figured since I'm going that way and Centerville is not too far from where I had to go I figured I do the guy a favor and drop him off where he said he needed a ride to. I mean I've been in a position where I've needed a ride.

The man got into the front passenger seat. Stevenson drove his passenger to 8th and Chelton Streets in the Centerville section of Camden. After Stevenson stopped the car, the man pulled out a pistol from his waistband or back pocket. The man pointed the gun at Stevenson's head and said "this is a carjacking." Stevenson panicked and tried to put his foot on the gas pedal to escape. As the car lurched forward, the assailant pulled the trigger and fired into Stevenson's abdomen. The bullet hit Stevenson's spinal cord. After the shooting, the man jumped out of the car and fled. The car continued to move slowly into the intersection where it hit another vehicle.

An ambulance took Stevenson to Cooper Medical Center where he underwent surgery. He remained at the hospital for over a month. His injuries made it impossible for him to walk. Doctors recommended rehabilitation therapy. For three or four months after he left the hospital, Stevenson was "incapacitated" and required constant assistance. About five months later, Dr. Paul Garrett, a radiologist, examined Stevenson and concluded, "there is severe compromise of the spinal canal primarily at the L4 level due to bone fragments and metallic fragments."

Stevenson sought to recover PIP benefits from State Farm for injuries related to the shooting, not from the car accident. State Farm denied the claim. He filed a complaint alleging State Farm wrongfully denied PIP benefits for gunshot injuries he received during the attempted carjacking.

On the cross-motions for summary judgment, State Farm accepted Stevenson's version of events for purposes of the motion and basic coverage issue only. The motions were argued on the issue of whether PIP coverage was available under the described events. The Law Division judge ruled in State Farm's favor and found no coverage. Again, as in *Ponter*, the potential defense under the statutory exclusion, *N.J.S.A.* 39:6A–7(a)(1), barring coverage for PIP benefits where the insured is involved in causative criminal activity, was not considered by the Law Division judge at the summary judgment motion.

## IV

Both Stevenson and Ponter claim PIP coverage because each was shot by a passenger in his car during an attempted carjacking. The insurance carriers claim that these events were not "accidents" while "using" a vehicle within the intent of *N.J.S.A.* 39:6A–4. The basic issue of coverage for these two incidents properly was before the Law Division and ripe for adjudication in both cases under the standards of *Brill v. Guardian Life Ins. Co. of America*, 142 *N.J.* 520, 666 *A.*2d 146 (1995). For reasons explained in section V below, the issue of applicability of the statutory exclusion for persons committing crimes, *N.J.S.A.* 39:6A–7, was not presented to the Law Division judges for disposition in either proceeding and requires a remand.

New Jersey's Automobile Reparation Reform Act (No–Fault Law) requires insurance companies to provide personal injury protection (PIP) benefits to their policyholders or families for bodily injuries sustained "as a result of an accident while occupying, entering into, alighting from or using an automobile." *N.J.S.A.* 39:6A–4. These benefits must be provided "without regard to negligence, liability or fault of any kind." *Id.* Consequently, this statute may be viewed as "social legislation intended to provide insureds with the prompt payment of medical bills, lost wages and other such expenses without making them await the

outcome of protracted litigation." *Amiano v. Ohio Casualty Ins. Co.*, 85 *N.J.* 85, 90, 424 *A.*2d 1179 (1981).

Courts must apply a liberal construction of the no-fault insurance scheme "so as to effect the purpose thereof." *N.J.S.A.* 39:6A–16. Because PIP coverage is considered "a social necessity," our Supreme Court directs "the broadest application consistent with the statutory language." *Lindstrom*, 138 *N.J.* at 247, 649 *A.*2d 1272; *Darel v. Pennsylvania Mfrs. Ass'n Ins. Co.*, 114 *N.J.* 416, 425, 555 *A.*2d 570 (1989) (quoting *Amiano*, 85 *N.J.* at 90, 424 *A.*2d 1179). The legislators apparently sought to ensure the "broadest coverage possible so long as an automobile was involved in that which happened." *Burns v. Market Transition Facility of New Jersey*, 281 *N.J.Super.* 304, 308, 657 *A.*2d 472 (App.Div.1995) (quoting *Pennsylvania Nat'l Mut. Cas. Ins. Co. v. Estate of Miller*, 185 *N.J.Super.* 183, 187, 447 *A.*2d 1344 (App.Div.1982)).

Subsequent amendments to the original 1972 No–Fault Act have not "changed the requirement that the Act be liberally construed to give the broadest application consistent with its language." *Lindstrom*, 138 *N.J.* at 249, 649 *A.*2d 1272. The Supreme Court in *Lindstrom* observed, "[t]he guiding principle remains intact: to accommodate the public interest behind the Act, courts must favor the insured and find coverage if possible." *Id.* at 249, 649 *A.*2d 1272.

Prudential and State Farm contend the present statutory language was designed to limit the initial 1972 legislative intent to provide broad PIP coverage for any bodily injuries sustained as a result of any accident "involving an automobile." The carriers stress that the 1983 amendment, *L.* 1983, *c.* 362, § 7, narrowed coverage to those bodily injuries which occurred "as a result of an accident while occupying, entering into, alighting from or using an automobile." *See N.J.S.A.* 39:6A–4 (Historical and Statutory Notes). Both insurance companies assert the amendatory 1983 statutory language restricted PIP coverage and narrowed the concept of an "accident" from the original understanding.

Prudential and State Farm specifically contend PIP coverage should not extend to carjackings. Prudential argues, "[e]ven if the automobile were the ultimate object of the assailant's actions, that in and of itself would not be sufficient to trigger PIP benefits." State Farm urges that "assuming plaintiff's allegations are correct and the shooting arose from an attempted carjacking, the attempted theft did not transform this incident into the type of accident which is compensable under the No–Fault Act."

The insurance carriers rely on several of our cases to support their argument that plaintiffs' bodily injuries are not covered by the more restrictive 1983 language. In *Morgan v. Prudential Ins. Co. of America*, 242 *N.J.Super.* 638, 577 *A.*2d 1300 (App.Div.), *certif. denied*, 122 *N.J.* 370, 585 *A.*2d 377 (1990), we denied PIP benefits to the estate of a woman shot to death inside her double-parked car by her estranged husband. The husband, who had triple-parked his car, approached the driver's side of his wife's car. *Id.* at 639, 577 *A.*2d 1300. When his wife reached out from the car to grab his gun, it discharged and fired a bullet into her head. *Id.* at 639–40, 577 *A.*2d 1300. While acknowledging that the automobile provided the "setting for the killing," we recognized "an automobile must have something more to do with the 'accident' if it is to be a legal cause." *Id.* at 642, 577 *A.*2d 1300. We concluded the Legislature "did not intend that PIP coverage provide protection to people injured in accidents for which there would not have been automobile liability coverage even if fault could be established." *Id.*

Likewise, in *Vasil v. Zullo*, 238 *N.J.Super.* 572, 570 *A.*2d 464 (App.Div.1990), we denied PIP benefits to a passenger who was killed when he got into an altercation with the occupants of a second vehicle. We held the passenger was not "using" the car within the meaning of the PIP provision because he voluntarily left the insured car and walked over to the second vehicle. *Vasil*, 238 *N.J.Super.* at 577, 570 *A.*2d 464 (finding "a verbal or physical confrontation with the occupants of another vehicle is not part of the normal use of an automobile"). We found the case involved

"the kind of circumstances which the Legislature intended to exclude from PIP coverage by the 1983 amendment to the law." *Id.* at 576, 570 *A.*2d 464.

Both insurance companies also rely on *Uzcatequi–Gaymon v. New Jersey Mfrs. Ins. Co.,* 193 *N.J.Super.* 71, 472 *A.*2d 163 (App.Div.1984), to support their proposition that an intentional assault on a driver is not covered when the automobile only "provided the setting." In *Uzcatequi–Gaymon,* we denied PIP benefits to the survivor of the insured who was shot outside of his car, near a public telephone, when he refused to surrender his car keys. *Id.* at 75, 472 *A.*2d 163. We found "an insufficient causal connection between the shot fired by his attackers and the automobile." *Id.* at 75, 472 *A.*2d 163. The fatal injuries did not fall within the class of injuries intended by the Legislature for No–Fault Law coverage.

Reliance by Prudential and State Farm on *Morgan, Vasil* and *Uzcatequi–Gaymon* is without avail. First, unlike *Vasil* and *Uzcatequi–Gaymon,* Ponter and Stevenson were shot while inside their vehicles. Second, unlike *Vasil, Morgan,* and *Uzcatequi–Gaymon,* both assailants were sitting in the passenger seats when they pulled their guns and shot the drivers. Third, unlike *Vasil, Morgan,* and *Uzcatequi–Gaymon,* automobiles provided more than a "mere setting"—each vehicle was both a conveyance to the scene of the crime and likely the sole object of the crime.

Responding to public concerns about carjacking, the Legislature enacted a carjacking statute in 1993. *N.J.S.A.* 2C:15–2, *L.* 1993, *c.* 221 made carjacking a first-degree crime, punishable by a prison term of ten to thirty years. *N.J.S.A.* 2C:15–2b. The statute also imposed a minimum five-year parole disqualifier. *N.J.S.A.* 2C:15–2b.

This court recently has recognized carjackings as a "pressing public problem." *State v. Williams,* 289 *N.J.Super.* 611, 618, 674 *A.*2d 643 (App.Div.), *certif. denied,* 145 *N.J.* 375, 678 *A.*2d 716 (1996). The Supreme Court also has recognized carjacking as a

foreseeable criminal event in certain circumstances for purposes of imposing tort liability on businesses. *Clohesy v. Food Circus Supermarkets,* 149 *N.J.* 496, 516, 694 *A.*2d 1017 (1997) (holding a supermarket had the legal duty to protect its customers from reasonably foreseeable injuries in its parking lot). In *Williams,* we found the severe punishment imposed by the carjacking statute fit the offense because "[c]arjacking is a calculated crime, and the Legislature could reasonably have concluded that the needs of society dictate that the punishment more nearly fit the offense than the offender." 289 *N.J.Super.* at 618, 674 *A.*2d 643. Denial of PIP coverage is inconsistent with these latest legislative and judicial expressions directed to protecting the public from carjacking, a crime intrinsically oriented to the possession of a vehicle by the victim.

The Supreme Court in *Lindstrom* recognized that *N.J.S.A.* 39:6A–4 "was not designed to function as general crime insurance." 138 *N.J.* at 253, 649 *A.*2d 1272. However, the Court emphasized that the statute does provide broad protection in cases where injuries are "substantially related to the use of an automobile." *Id.* In *Lindstrom,* the Court held the insured pedestrian was entitled to PIP benefits for injuries from a drive-by shooting because "the automobile did more than provide a setting or an enhanced opportunity for the assault." *Id.* at 252, 649 *A.*2d 1272. The automobile provided the assailant with anonymity for the attack and the means of escape such that "[t]he assailant would not likely have committed such an act of apparently random violence without the use of a car." *Id.* The Supreme Court remarked that drive-by shootings were an "increasingly-common part of the American experience" and, in that sense, the victim's injuries were foreseeable. *Id.* Unfortunately, so are carjackings.

Both assailants in the cases before us stated they shot the victims, Ponter and Stevenson, during attempted carjackings. Ponter's assailant later was identified, pled guilty, and was adjudicated and sentenced as a juvenile for carjacking and attempted murder. There is nothing to suggest the assailant pled guilty for

any reason other than actual guilt. Stevenson testified in his deposition that his assailant said, "this is a carjacking. I want your car. Those were his exact words."

■ Insureds are entitled to PIP coverage if a fair interpretation of the law can support their "objectively-reasonable expectations." *Lindstrom*, 138 *N.J.* at 247, 649 *A.*2d 1272. As observed, the crime of carjacking, like drive-by shootings, has become increasingly common. Because their injuries were foreseeable, Ponter and Stevenson reasonably could have expected to receive PIP benefits. This interpretation of the No–Fault Law is consistent with the statute's express mandate that it "... be liberally construed so as to effect the purpose thereof." *N.J.S.A.* 39:6A–16.

To recover PIP benefits both Ponter and Stevenson must have sustained injuries "as a result of an accident while occupying ... or using an automobile." *N.J.S.A.* 39:6A–4. In *Mondelli v. State Farm Mut. Auto. Ins. Co.*, 102 *N.J.* 167, 506 *A.*2d 728 (1986), the Supreme Court interpreted "occupying" in an insurance policy to include a person who stood next to, and leaned on, the roof of his friend's automobile when he was struck by a hit-and-run driver. While the Court eschewed any "hard and fast rule" to determine whether the policy definition of "occupying" is satisfied, the Court cautioned that the connection between the accident and some touching of the car must be more than coincidental. *Id.* at 172, 506 *A.*2d 728. Here, both Stevenson and Ponter were sitting inside their cars when they were shot. Clearly, they were "occupying" their cars in both the literal and statutory sense.

■ Moreover, to qualify for PIP coverage, there also must be a substantial nexus between the accident, the injury and the use of the automobile. *Westchester Fire Ins. Co. v. Continental Ins. Cos.*, 126 *N.J.Super.* 29, 38, 312 *A.*2d 664 (App.Div.1973), *aff'd o.b.*, 65 *N.J.* 152, 319 *A.*2d 732 (1974). Under this substantial nexus test, the accident must be a reasonable consequence of the use of the automobile and one for which the parties would expect protection. *Id.* (finding the insurance policy covered a bicyclist struck and killed by a stick thrown by a passenger in a moving car

because such injuries were not uncommon and could be anticipated by parties to the insurance contract).

In *Pennsylvania Nat'l,* we held that a *victim's* perspective determines whether an event constitutes an accident for PIP purposes. 185 *N.J.Super.* at 188, 447 *A.2d* 1344 (finding that a victim whose husband intentionally ran his car off the road and into the Delaware River qualified for PIP benefits). An injury caused by a criminal act is considered an accident for PIP purposes if produced by the design of the actors, but wholly unexpected and untoward from the standpoint of the victims. *Id.* The Supreme Court unqualifiedly has agreed that intentionally-inflicted injuries constitute an accident from the innocent victim's viewpoint. *Lindstrom,* 138 *N.J.* at 249, 649 *A.2d* 1272.

Earlier, in 1987 in *Smaul,* 108 *N.J.* at 475–76, 530 *A.2d* 1251, the Supreme Court addressed the issue of whether a plaintiff, assaulted while in his car and then dragged from his car after stopping to ask directions of two pedestrians, was entitled to PIP benefits for "accidental" injury. The Court recognized the distinction between incidents involving the use of an automobile and those where the vehicle's presence was merely incidental or immaterial. *Id.* at 477, 530 *A.2d* 1251. In *Smaul,* the Supreme Court found a substantial nexus between the injury and the use of the car. *Id.* at 477–78, 530 *A.2d* 1251. Specifically, the Court found that the injury directly involved the use of the car because: (1) it was foreseeable for a driver to stop and ask for directions; and (2) the victim Smaul remained seated in his car when first attacked. *Id.* at 478, 530 *A.2d* 1251. The Court also observed the purpose of the assault "was to steal the car." The Court's language in *Smaul* was quite unequivocal in finding coverage for an "accident" when the insured was attacked while inside the car.

Although the fact that Smaul stopped for directions and remained seated in his car, hence directly involving the use of his automobile, serves to distinguish this case from *Uzcatequi–Gaymon,* we need not rest on that feature alone to find liability for PIP benefits in this case. Here there was direct involvement of the automobile in the accident: plaintiff sought directions so that he could drive his car to his destination, he was sitting in his car when the assault occurred, and a

purpose of the assailants—not emphasized by either court below but acknowledged in Allstate's Statement of Facts—was to steal the car after yanking plaintiff out of the driver's seat. The effort to take the automobile removes, for us, any doubt about this case falling within the statutory requirement of an "accident involving an automobile." Surely the automobile was not merely coincidental to the critical events or a mere "attending circumstance": its role was central to the incident. We see no reason rooted in either public policy or statutory interpretation why the fact that a criminal act was involved in the accident should deprive this plaintiff of PIP benefits.

[*Smaul,* 108 *N.J.* at 478–79, 530 *A.*2d 1251.]

And in 1994 in *Lindstrom,* 138 *N.J.* at 252, 649 *A.*2d 1272, the Supreme Court reinforced the *Smaul* criminal-victim concept of "accident" in the PIP context, stating:

In respect of the "foreseeability" question, we ruled in *Smaul, supra,* that assaults on drivers related to the use of automobiles were foreseeable and that the vehicle was "central" to the assault. 108 *N.J.* at 478, 530 *A.*2d 1251. We are satisfied that *Smaul* controls on that issue: Kurt's [Lindstrom] injury was foreseeable.

[*Lindstrom,* 138 *N.J.* at 252, 649 *A.*2d 1272.]

In the cases before us, both Stevenson and Ponter used their vehicles to drive their unsuspected assailants to unfamiliar locations in the City of Camden. Upon arrival, each victim was shot while still inside his car. Each assailant evinced an intent to steal the car. The automobile was "not merely coincidental to the critical events or a mere 'attending circumstance': its role was central to the incident." *Smaul,* 108 *N.J.* at 478, 530 *A.*2d 1251. The vehicular nexus was demonstrable and undeniable.

## V

We now turn to the implications of *N.J.S.A.* 39:6A–7(a)(1), the statutory exclusion of PIP coverage for any person whose "conduct contributed to his personal injuries ... while committing a high misdemeanor or felony...." This statute is a strong legislative expression of a public policy to deny PIP benefits to those insureds otherwise covered whose criminal conduct contributed to their injuries. At oral argument counsel for the defendant carriers each expressed their client's desire to press this statutory-

exclusion defense if coverage was found available under these operative facts.

The Law Division did not consider the applicability of the statutory exclusion for contributory criminal conduct on the summary judgment motions in these cases. Instead, the court adjudicated only the basic coverage issue, accepting for purposes of the motion only, the assumption of plaintiffs as non-criminally-complicit victims. Since this issue has not been presented squarely to the trial-level courts for plenary fact-finding and legal conclusions, we decline to entertain the issue or speculate on what may develop, if anything, should the defendant carriers attempt to muster proofs to defeat these presumptively covered claims. There is no case law on the precise issue—drug-dealing and consequent assaults while using automobiles. *See Serio v. Allstate Ins. Co.*, 210 *N.J.Super.* 167, 509 *A.2d* 273 (App.Div.1986) (no coverage for accident during flight to avoid apprehension); *Kaplowitz v. State Farm Mut. Auto. Ins. Co.*, 201 *N.J.Super.* 593, 493 *A.2d* 637 (Law Div.1985) (coverage for joyriding juvenile involved in an accident).

We remand both cases for further proceedings and a possible plenary hearing on the issue of the applicability of *N.J.S.A.* 39:6A–7(a), if proofs are forthcoming to support the statutory defense to PIP coverage, which otherwise is available to plaintiffs.

Reversed for further proceedings on remand in A–2861–96T5; affirmed and remanded for further proceedings in A–4332–96T2.