THOMAS LAYDEN, RESPONDENT, v. THE GOODYEAR TIRE AND RUBBER CO., INC., A CORPORATION, APPELLANT.

Submitted May 29, 1942—Decided September 18, 1942.

For the appellant, *George L. Burton.*

For the respondent, *John C. Stockel.*

The opinion of the court was delivered by

PARKER, J. This is an accident case, the circumstances of which are unusual, as will appear presently. The plaintiff was very severely injured, and the verdict in his favor was a large one. The case was carefully tried, and there are only three grounds of appeal, namely, refusal to nonsuit on the plaintiff's opening; refusal to nonsuit when the plaintiff rested; and refusal to direct a verdict for defendant at the conclusion of the evidence.

The rule is of course thoroughly settled that the refusal of nonsuit for failure of proof is not error leading to a reversal if such proofs were afterwards supplied by either party in the progress of the trial. Some of the decisions on this point are *Perth Amboy Manufacturing Co.* v. *Condit,* 21 *N. J. L.* 659, 662; *Delaware, Lackawanna and Western Railroad Co.* v. *Dailey,* 37 *Id.* 526; *May* v. *North Hudson County Railway Co.,* 49 *Id.* 445; *West Jersey and Seashore Railroad Co.* v. *Welsh,* 62 *Id.* 655, 657; *Esler* v. *Camden Suburban Railway Co.,* 71 *Id.* 180; *Bostwick* v. *Willett,* 72 *Id.* 21; *Carey* v. *Hamburg-American Packet Co., Ibid.* 56; *Schnackenberg & Co.* v. *Delaware, Lackawanna and Western Railroad Co.,* 86 *Id.* 517. The questions for decision therefore are, first, whether on the whole case there was evidence justifying a jury concluding that the plaintiff's injury was due to negligence of the defendant; and secondly, whether as a court question plaintiff was shown to have been guilty of contributory negligence. The first question is two-fold: was there a duty owing to plaintiff by defendant and if so, was there a breach of that duty?

This brings us to the circumstances of the accident. The defendant was exploiting a certain type of automobile tire by means of a dirigible balloon of the kind colloquially known as a "blimp," on the side of which the defendant's advertisement was painted in large letters for all to see. This contrivance was temporarily "moored" on a field near Perth Amboy, called "Hadley Airport" in the testimony. Defend-

ant's sales agent in that city was one Frank Van Syckle, and plaintiff was a "part time" salesman for Van Syckle. He had seen the blimp in the air, and as he was on his way to see a "prospect" and had to pass this field he took his five year old daughter with him to show her the blimp, and stopped at the field where it was moored about 300 feet from the road. There was no fence around the field. He parked his car in the road where a number of other cars were also parked, and the two walked over toward the blimp which, according to plaintiff's testimony, had a crowd of 50 to 75 sightseers around it, and some men were working on the "nose" which was moored by a rope to a mast set in the ground, and pulled down to a small truck on which the workmen were. The "blimp" had a cabin underneath it, the floor of which was at the height of plaintiff's chin. He testified that he lifted the child up to see into the cabin, then set her down alongside of him, and "peeked over" to look in, when the blimp suddenly rose and the plaintiff discovered that his daughter was clinging to the ladder, which was going up with the blimp. She screamed, but held on. He in his excitement and fear for her seized the bottom step, was carried up into the air some twenty-five feet or more, when the mooring line stopped the blimp with a jerk and plaintiff fell to the ground and was injured.

We consider that the circumstances above detailed afforded a basis for the conclusion that there was at least an implied invitation to the public generally to enter the field and inspect the balloon. It was all part of an advertising scheme. Indeed, Van Syckle testified that he was supplied with tickets for rides in the car of the blimp, and that one important purpose was to attract the public. It is true that the "turntable cases" rule does not obtain in this state. *Turess* v. *New York, Susquehanna and Western Railroad Co.,* 61 *N. J. L.* 314; *Delaware, Lackawanna and Western Railroad Co.* v. *Reich, Ibid.* 635 (see *Friedman* v. *Snare & Triest Co.,* 71 *Id.* 605). But those decisions are inapplicable where, as here, the circumstances appearing by the evidence indicate a desire to attract the public. Tested by the rule formulated

in *Furey v. New York Central and H. R. Railroad Co.*, 67 *Id.* 270, we are clear that the jury were entitled to find, and must have found, that members of the public were expected, and hence invited, to enter the field and make a closer inspection of a device avowedly intended to broadcast the fact that defendant had a product and wished to encourage the sales thereof.

If, then, the public were invited to enter this large open field in order to look at the balloon, where did the invitation stop, and change from an invitation to a mere license? There is nothing to show any limit. The crowd described by plaintiff was assembled closely around the balloon. There was no railing, rope, or other barrier. The balloon was down close to the ground, and "there was a ladder that went up into the cabin * * * the door * * * was about chin high * * * I raised my daughter up so she could look inside of it, and then I set her down alongside of me." This is the plaintiff's testimony on direct. A photograph admitted in evidence shows the balloon with car, ladder, and the mooring rope hanging from the nose of the balloon proper. One of the plaintiff's witnesses testified that there were no signs, or warning, or roped off areas. Defendant's witness Bennett testified on direct that the ladder was like "a step ladder such as a housewife uses in her kitchen with the small steps about that wide, and having two hand rails on either side." Bennett was one of the visiting public. So also was defendant's witness Willis who was particularly "interested in the instruments in the gondola." He "had to climb up onto just a couple of rungs of the ladder to look at the instruments, but then people came around and I had to move * * *."

We conclude, therefore, that a finding of invitation not merely to enter the field, but to approach the balloon and examine it closely even to the extent of partially ascending the ladder placed there apparently for that very purpose, was clearly inferable from the testimony. The jury having therefore found that there was invitation, that finding carried as its logical consequence the duty of reasonable care in the management of a potentially dangerous contrivance;

and the circumstances as described in the testimony amply justified the jury in holding that the care was not exercised.

It does not seem to be claimed that the father, seeing his daughter in apparently imminent danger, was not justified in taking such measures as occurred to him in the sudden and unexpected emergency of saving his daughter from death or injury. The rule sometimes called "the rule in rescue cases" seems to be well settled and to require no particular discussion. 45 *C. J.* 966, § 520. A recent incidence of its application in this state is the case of *Tarnow* v. *Hudson and Manhattan Railroad Co.,* 120 *N. J. L.* 505; *affirmed,* 121 *Id.* 522.

We conclude, therefore, that the judgment should be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, PORTER, COLIE, DEAR, WELLS, RAFFERTY, HAGUE, THOMPSON, JJ. 15.

*For reversal*—None.