183 N.J. Super. 352 (1982)
443 A.2d 1118
ANTHONY J. SCIASCIA, SR., AS ADMINISTRATOR FOR THE HEIRS AT LAW OF ANTHONY J. SCIASCIA, JR., DECEASED, AND AS ADMINISTRATOR OF THE ESTATE OF ANTHONY J. SCIASCIA, JR., DECEASED, AND INDIVIDUALLY, PLAINTIFF,
v.
THE AMERICAN INSURANCE COMPANY, A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT AND THIRD-PARTY PLAINTIFF,
v.
THE NEWARK INSURANCE COMPANY (IMPROPERLY PLEADED AS ROYAL GLOBE INSURANCE COMPANIES), THIRD-PARTY DEFENDANT.
Superior Court of New Jersey, Law Division Morris County.
Decided February 2, 1982.
*353 John R. Lanza for plaintiff (Winget, Keating, Thatcher & Lanza, attorneys; John R. Lanza on the brief).
Kevin A. Couch for defendant and third-party plaintiff (O'Donnell, McCord & Leslie, attorneys; John J. O'Donnell on the brief).
Robert W. Nevins, Jr., for third-party defendant (Haggerty & Donohue, attorneys).
STEIN, J.S.C.
Plaintiff's summary judgment motion presents a novel question concerning the extent of uninsured motorist (UM) coverage. Here such coverage is sought for an intentional act  the deliberate firing of a shotgun by a passenger in a then moving automobile of an uninsured owner-operator. One of these shots struck and killed the insured.
The essential facts are not in dispute. On the evening of May 12, 1977 decedent and a female companion drove to Harmony *354 Dam in Harmony Township, Warren County. Decedent parked between two other cars. Other people, mostly young men, were standing outside the other cars parked along the road.
Two brothers, Stires and Counterman, had been involved in some fighting at the dam earlier that evening. They had capped a day of drinking with a visit to the dam. Shortly after their arrival a fight broke out because one of the brothers had been throwing rocks at the windshields of parked cars. After the fight broke up, and as the brothers were making their retreat, one of the youths with whom they had been scuffling threw a rock and smashed the windshield of Counterman's car.
Stires and Counterman retreated from the scene in Counterman's auto. They drove to the house of Counterman's grandmother, a trip which took about eight to ten minutes, where they obtained a shotgun. They intended to return to Harmony Dam to shoot out the windshield of the automobile of the young man who had thrown a rock through Counterman's windshield.
Counterman then drove back to the dam by a somewhat shorter route. Stires sat on the sill of the car with his torso outside, aiming the shotgun over the roof of the car. As Counterman drove up the road at about 30 miles an hour, Stires fired two shots at a parked car. Decedent and his companion were standing outside this vehicle. The first shot struck decedent's friend, and the second shot struck and fatally wounded decedent. Both Counterman and Stires deny seeing the two people outside the parked vehicle when the shots were fired.
Counterman was an uninsured motorist at the time of the accident. Decedent's automobile liability policy provided uninsured motorist coverage in standard language form. The policy states in part:
The company will pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured highway vehicle because of bodily injury or property damage, caused by accident and arising out of the ownership, maintenance or use of such uninsured highway vehicle ... [Emphasis supplied]
This policy provision is simply a restatement of N.J.S.A. 17:28-1.1, which requires that all automobile liability insurance *355 policies must include coverage to the insured for bodily injury, sickness, or death recoverable from owners and operators of uninsured automobiles
... caused by accident and arising out of the ownership, maintenance or use of such uninsured ... automobile. [N.J.S.A. 17:28-1.1, as amended, L. 1972, c. 204, § 1]
Interpretation of this policy provision requires this analysis: Was there an accident? If so, did the accident arise out of ownership, operation or use of Counterman's vehicle?

Was There an Accident?
The UM endorsement to decedent's policy does not define the word "accident." Reference must be made to case law.
Decisional law in New Jersey defines an "accident" as an injury-causing event, one which is unforeseen, unusual and unexpected. Korfin v. Continental Cas. Co., 5 N.J. 154, 158 (1950). Simply put, an accident is an unexpected, unintended happening.
For the purposes of evaluating UM coverage, the question of whether an incident or event is an "accident" must be considered from the viewpoint of the insured. UM coverage differs from liability insurance coverage, the purpose of which is to indemnify the insured for damages which must be paid to others as a result of the insured's tortious conduct. UM coverage is first-party coverage. Its purpose is to compensate the insured or his legal representatives for losses sustained by the insured.
For the purposes of determining coverage under a policy of liability insurance, the traditional view is that an intentional wrong is not considered to be an accident. The rationale for this principle is that a person should not be indemnified for loss or damage resulting from his own intentional wrongdoing. Ruvolo v. American Cas. Co., 39 N.J. 490, 496 (1963).
This principle has no application in evaluating UM coverage. This is not a claim seeking recovery or indemnification under a policy of liability insurance. The claim made is for *356 wrongful death benefits under a policy affording uninsured motorist coverage to the decedent insured. The distinction is critical. Here, an innocent victim, not the tortfeasor, is the insured. Decedent insured paid the premiums and his legal representative seeks recovery from the carrier which accepted these premiums  and which agreed to provide its insured with protection from certain wrongful acts of the financially irresponsible motorist.
There is no public policy which mandates or even suggests that, in UM coverage questions, an incident should be viewed through the eyes of the wrongdoer to determine if the insured was the victim of an "accident." The tortfeasor is not a party to the contract of insurance. His intent or purpose is immaterial. He will not benefit from his wrongful conduct. The insured's UM carrier should not be permitted to benefit from an inappropriate interpretation of the word "accident" contained in its policy of insurance. So far as uninsured motorist coverage is concerned, the question of whether there was an "accident" must be evaluated from the viewpoint of the insured.
There is no reported New Jersey decision. Other jurisdictions have held that in UM coverage analysis the question of whether an accident occurred must be viewed from the insured's perspective. See Annotation, "Coverage under Uninsured Motorist Clause of Injury Inflicted Intentionally," 72 A.L.R.3d 1156, 1161 (1976). These cases usually involve situations where the uninsured motorist intentionally drove his vehicle into the UM policyholder. Leatherby Ins. Co. v. Willoughby, 315 So.2d 553 (Fla.App. 1975); Celina Mut. Ins. Co. v. Saylor, 35 Ohio Misc. 81, 301 N.E.2d 721 (C.P. 1973); Davis v. State Farm Mut. Ins. Co., 264 Or. 547, 507 P.2d 9 (Sup.Ct. 1973).
In Celina, the court stated:
... To look through the eyes of the uninsured rather than the insured in this factual situation would require an unconscionable twisting of the obvious purpose of purchasing insurance coverage. [301 N.E.2d at 723]
From the viewpoint of the insured, decedent's death must be considered to have resulted from an accident. The purpose of *357 Stires and Counterman in causing a shotgun to be fired from a moving vehicle is not material. From the perspective of the decedent, this was obviously an unintended, unexpected happening. Decedent's death was caused by an "accident" within the terms of the UM policy coverage provided him.
New Jersey is a compulsory automobile insurance state. Motorists are required to carry, and automobile insurance carriers doing business in this State are required to issue, liability insurance coverage in minimum amounts of $15,000 for each person insured in an automobile accident, and $30,000 for all persons injured in any single accident. N.J.S.A. 39:6A-3; N.J.S.A. 17:28-1.1. Every carrier writing automobile insurance in this State must include uninsured motorist coverage as part of such policy. N.J.S.A. 17:28-1.1. Viewing the question of "accident" in UM cases from the perspective of the insured satisfies the legislative purpose of providing the broadest protection to automobile accident victims consistent with the applicable statutory language.

Did the Accident Arise out of the "Ownership, Maintenance or Use" of the Uninsured Automobile?
Disposition of this case is governed by the principle set forth in Westchester Fire Ins. Co. v. Continental Ins. Co., 126 N.J. Super. 29 (App.Div. 1973), aff'd per curiam, 65 N.J. 152 (1974). There, liability was found to exist where a passenger threw a stick from the insured's moving vehicle, striking the plaintiff bicyclist. This incident was held to be an "accident arising out of the ... use" of the insured's automobile.
While Westchester Fire dealt with coverage under an automobile liability policy, its reasoning is applicable in determining the question of interpretation presented in this UM coverage case. In this case the same question must be resolved: Did this accident "arise out of the use" of an automobile?
The court in Westchester Fire rejected the view that the phrase "arising out of the use" means that before coverage *358 exists there must be a finding that the injury be a direct and proximate cause of the use of the automobile. Legal concepts of proximate cause have no role in the interpretation of this contractual clause. The court held that there need be shown only a "substantial nexus"  that is, a substantial connection or link  between the injury and the use of the vehicle in order for there to arise the obligation to provide coverage. Id. at 38. Moreover, the court stated that the inquiry should be
... whether the negligent act which caused the injury, although not foreseen or expected, was in the contemplation of the parties to the insurance contract a natural and reasonable incident or consequence of the use of the automobile, and thus a risk against which they might reasonably expect those insured under the policy would be protected. [Id. at 38; emphasis supplied]
The court recognized that all kinds of objects, such as lighted cigarettes and cigars, food and drink containers and other debris are frequently thrown from moving vehicles. Accordingly, the passenger's act in throwing a stick from a moving automobile  although not foreseen or expected  was a sufficiently foreseeable consequence of the use of the vehicle. The court stated:
... We think it was within the reasonable expectation of the parties that the insureds be provided with protection against the consequences of such an act. We think also that a member of the public who sustained injury as a result of such an unfortunate occurrence might reasonably be expected to look to the vehicle and those using it as a source of redress. [Id. at 39]
The court specifically reserved decision on the applicability of the phrase "arising out of the use of an automobile" in situations involving gunshots and the ejection of bombs, fireworks and other intrinsically dangerous objects from motor vehicles. Generally, as Westchester Fire points out, courts in other jurisdictions have held that no coverage exists. Id. at 40. See, also, Annotation, "Automobile Liability Insurance: what are accidents or injuries `arising out of ownership, maintenance, or use' of insured vehicle," 89 A.L.R.2d 150 (1963).
Measured by the principles set forth in Westchester Fire, uninsured motorist coverage must be denied. The deliberate firing of a shotgun by the passenger Stires from a moving vehicle, with the knowledge of  and participation and assistance *359 by  the driver Counterman, cannot be considered to have arisen out of the use of Counterman's vehicle. There was no substantial connection between the insured's death and the use of the uninsured automobile by Counterman and Stires.
More specifically, this unfortunate occurrence, although unforeseen and unexpected by decedent insured, was not one which, in the contemplation of the parties to the UM contract, was a natural and probable incident or consequence of the use of an automobile by an uninsured motorist. It was not a risk against which the insurer and the insured might reasonably expect that protection would be afforded under a policy providing uninsured motorist coverage.
Plaintiff's motion for summary judgment is denied. Because there exists no genuine question of material fact, the matter will be treated as if defendant insurance company had submitted a cross-motion for summary judgment. Accordingly, counsel for defendant The American Insurance Company will submit an order (1) denying plaintiff's motion for summary judgment; (2) granting summary judgment in favor of defendant The American Insurance Company and against plaintiff, and (3) dismissing the third-party complaint of defendant and third-party plaintiff The American Insurance Company against third-party defendant.