236 N.J. Super. 372 (1989)
565 A.2d 1125
FRANCO A. CERULLO, PLAINTIFF-RESPONDENT,
v.
ALLSTATE INSURANCE COMPANY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 13, 1989.
Decided October 30, 1989.
*373 Before Judges GAULKIN, DREIER and D'ANNUNZIO.[1]
John Haschak, III, argued the cause for appellant (Leary, Bride, Tinker & Moran, attorneys).
Donald D. Campbell argued the cause for respondent.
The opinion of the court was delivered by D'ANNUNZIO, J.A.D.
Defendant, Allstate Insurance Company, appeals from a summary judgment that its uninsured motorist coverage (UM) applies to an intentional assault upon the plaintiff, its insured, perpetrated by a passenger in an unidentified automobile.
The material facts are not in dispute. On September 26, 1987, plaintiff was operating his automobile. He moved from *374 the right lane to the left lane and in doing so "cut off" the unidentified vehicle. While plaintiff's car was stopped at the next intersection, the unidentified vehicle stopped beside him. A passenger emerged from the unidentified vehicle, approached plaintiff's window and punched plaintiff, causing serious eye injury. The unidentified vehicle and the assailant immediately left the scene.
Plaintiff commenced this action against his insurer, Allstate, alleging a right to personal injury protection benefits (PIP) and benefits pursuant to UM coverage. The parties settled the PIP claim, but litigated UM coverage through cross-motions for summary judgment.
The trial court felt compelled by Smaul v. Irvington General Hosp., 108 N.J. 474 (1987), to enter judgment in plaintiff's favor. Smaul involved a PIP claim by a person who was assaulted and robbed when he stopped to ask directions of two pedestrians. In addition to beating plaintiff and taking his money, the perpetrators attempted to steal his car. The Supreme Court held that PIP coverage was applicable because the assault "although not foreseen or expected [was] in the contemplation of the parties to the insurance contract, a `natural or reasonable incident or consequence of the use of the automobile, and thus a risk against which they might reasonably expect those insured under the policy would be protected.'" Id. at 478 quoting Westchester Fire Ins. Co. v. Continental Ins. Co., 126 N.J. Super. 29, 38 (App.Div. 1973), aff'd 65 N.J. 152 (1974). The Court also focused on the automobile's involvement in the incident:
[P]laintiff sought directions so that he could drive his car to his destination, he was sitting in his car when the assault occurred, and a purpose of the assailants  not emphasized by either court below but acknowledged in Allstate's Statement of Facts  was to steal the car after yanking plaintiff out of the driver's seat. The effort to take the automobile removes, for us, any doubt about this case falling within the statutory requirement of an "accident involving an automobile." Ibid.

The statute applied in Smaul mandated PIP benefits for an insured "who sustained bodily injury as a result of an accident *375 involving an automobile.... N.J.S.A. 39:6A-4.[2] The UM coverage is also mandated by statute, N.J.S.A. 39:6A-14, and is defined in N.J.S.A. 17:28-1.1a as being applicable, in part, to "bodily injury ... sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured or hit and run motor vehicle...." Thus, there is superficial similarity between the PIP phrase "accident involving an automobile" and the UM phrase "arising out of the ownership, maintenance or use" of a vehicle, although the PIP wording is broader. See Darel v. Pennsylvania Mfrs. Ass'n. Ins. Co., 114 N.J. 416, 422 (1989). However, differences between the purpose and function of each coverage are significant and transcend any similarities in language.
UM coverage requires an injury "arising out of the ownership, maintenance, or use" of the uninsured vehicle. Benefits are available only if the covered party, the plaintiff in this case, establishes that he is "legally entitled to recover damages from the operator or owner" of the uninsured or hit and run vehicle. PIP benefits, on the other hand, more closely resemble accident, disability and medical coverages in which fault is irrelevant. This distinction is significant because UM coverage is mandated as a substitute for the liability insurance which should have been covering the uninsured vehicle. Fernandez v. Selected Risks Ins. Co., 82 N.J. 236, 240 (UM coverage designed "to ease the financial burden on the Unsatisfied Claim and Judgment Fund and to provide insured motorists with protection from uninsured, financially irresponsible motorists."); accord, Gorton v. Reliance Ins. Co., 77 N.J. 563, 571 (1978); Motor Club of America Ins. Co. v. Phillips, 66 N.J. 277, 284, 292 (1974); Beltran v. Waddington, 155 N.J. Super. 264, 268 (App.Div. 1978) (mandated U.M. coverage provides "coverage against the negligence of uninsured and unknown *376 motorists to be provided by one's liability carrier" thereby relieving financial pressures on Unsatisfied Claim and Judgment Fund); State Farm Mut. Auto v. Toro, 127 N.J. Super. 223, 229 (Law Div. 1974) (UM coverage "alleviate[s] the economic hardship imposed upon victims of negligently operated automobiles where compensation is otherwise thwarted either by reason of lack of knowledge of the tortfeasor's identity or his financial irresponsibility.")
In construing a statute we must give effect to the legislature's intent. County of Monmouth v. Wissell, 68 N.J. 35 (1975). Sources of legislative intent are the language of a statute, the policy behind a statute, concepts of reasonableness and legislative history. Shapiro v. Essex Cty. Freeholders Bd., 177 N.J. Super. 87 (Law Div. 1980), aff'd 183 N.J. Super. 24 (App.Div. 1982), aff'd 91 N.J. 430 (1982). "[S]tatutes are to be read sensibly rather than literally and the controlling legislative intent is to be presumed as `consonant to reason and good discretion.'" Schierstead v. Brigantine, 29 N.J. 220, 230 (1959) (citations omitted). And "where a literal reading of the statute leads to absurd consequences `the court must restrain the words' and seek the true legislative intent." Id. at 231, quoting In re Merrill, 88 N.J. Eq. 261 (Prerog.Ct. 1917). In construing a statute we assume that the Legislature intended a reasonable approach, and the statute should be construed to effect a reasonable approach. Roman v. Sharper, 53 N.J. 338, 341 (1969).
Applying these principles in light of the legislative purpose in requiring UM coverage, we conclude that plaintiff's injury did not arise "out of the ownership, maintenance or use" of an uninsured vehicle within the meaning of N.J.S.A. 17:28-1.1. In Sciascia v. American Ins. Co., 183 N.J. Super. 352 (Law Div. 1982), aff'd o.b., 189 N.J. Super. 236 (App.Div. 1983), we affirmed a Law Division decision that a death caused by a gunshot fired from a moving automobile was not within UM coverage. In that case, it had been the assailant's intention to shoot out the windshield of a parked car to avenge the recent *377 destruction of the uninsured driver's windshield. Although the Law Division concluded that the incident constituted an "accident" within the meaning of N.J.S.A. 17:28-1.1, accord, Smaul, supra, the court determined that the incident "was not one which, in the contemplation of the parties to the UM contract, was a natural and probable incident or consequence of the use of an automobile by an uninsured motorist." Sciascia, 183 N.J. Super. at 359. Despite Smaul, decided five years after Sciascia, we consider Sciascia to have been decided correctly. We persist in this point of view because, as previously indicated, the PIP and UM coverages satisfy significantly different needs.
The coverage required by N.J.S.A. 17:28-1.1 protects an injured party who does not have recourse against an automobile liability insurance policy. See Gorton v. Reliance Ins. Co., supra; N.J.S.A. 17:28-1.1e.(2). Automobile liability insurance would not provide coverage for an intentional criminal act, Allstate Ins. Co. v. Malec, 104 N.J. 1 (1986), because "all or virtually all" auto liability policies contain exclusions for intentionally caused harm.[3]Id. at 11. Cf. Malanga v. Manufacturers Cas. Ins. Co., 28 N.J. 220, 225 (1958) (public policy prohibits indemnification of a person for a loss incurred as a result of his own intentional wrongdoing). Thus, if UM coverage applies to injuries sustained through an intentional criminal attack effected through an instrumentality (in this case a fist) other than an automobile, then UM coverage, conceived as a first party substitute for third party liability coverage, would provide substantially greater protection than the third party coverage it replaces.
*378 We do not suggest that UM and automobile liability coverages are perfectly symmetrical,[4] but we perceive no legislative intent to establish UM coverage as a form of general crime insurance based on an indirect nexus between an automobile and the criminal act.
Reversed.
NOTES
[1] Subsequent to oral argument before Judges Dreier and D'Annunzio, the parties consented to Judge Gaulkin's participation in this appeal.
[2] N.J.S.A. 39:6A-4 has been amended, in part, to provide PIP coverage for "bodily injury as a result of an accident while occupying, entering into, alighting from or using an automobile." L. 1983, c. 362, § 7.
[3] The definition of uninsured motor vehicle includes a motor vehicle to which a bodily injury liability insurance policy is applicable "but the liability insurer denies coverage." N.J.S.A. 17:28-1.1e.(2)(b). Consequently, a vehicle insured under a policy containing an exclusion for intentional torts would be an uninsured vehicle within the meaning of the statute. Ibid.
[4] We do not decide whether UM coverage applies to an intentional assault in which the uninsured automobile is the instrument of harm. Compare Leatherby Ins. Co. v. Willoughby, 315 So.2d 553 (Fla.Dist.Ct. of Appeal, 1975) and Nationwide Mut. Ins. Co. v. Roberts, 261 N.C. 285, 134 S.E.2d 654 (1964), which held that UM coverage applied to assault with an automobile, with McCarthy v. Motor Vehicle Accident Indemnification Corp., 16 A.D.2d 35, 224 N.Y.S.2d 909 (App.Div. 1962), aff'd, 12 N.Y.2d 922, 188 N.E.2d 405, 238 N.Y.S.2d 101 (1963), which held that it did not. See generally, Annotation, Coverage Under Uninsured Motorist Clause of Injury Inflicted Intentionally, 72 A.L.R.3d 1161 (1965).