281 N.J. Super. 304 (1995)
657 A.2d 472
ROBERT E. BURNS, PLAINTIFF-RESPONDENT,
v.
MARKET TRANSITION FACILITY OF NEW JERSEY, CSC INSURANCE SERVICES, HERTZ CLAIM MANAGEMENT, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued February 7, 1995.
Decided May 11, 1995.
*305 Before Judges LANDAU, CONLEY and NEWMAN.
*306 Louise Ann Watson argued the cause for appellants (Marshall, Dennehey, Warner, Coleman and Goggin, attorneys; Ms. Watson, on the brief).
Steven L. Kessel argued the cause for respondent (Drazin & Warshaw, attorneys; Mr. Kessel, on the brief).
The opinion of the court was delivered by NEWMAN, J.S.C. (temporarily assigned).
The issue of first impression raised by this case is whether a good samaritan who sustains injury while rendering aid to a driver trapped in an automobile following a collision is entitled to personal injury protection benefits (PIP) under N.J.S.A. 39:6A-4. The motion judge granted partial summary judgment against plaintiff's PIP carrier, ruling that a person who sustains bodily injury in rendering such assistance to the driver is entitled to PIP coverage. We affirm.[1]
The relevant facts are these. On June 30, 1991 at about 7:00 P.M., the plaintiff Robert Burns was driving southbound on the Garden State Parkway behind his brother, Terrence Burns. Each brother was driving his own automobile. A third vehicle, driven by Juan Lugo, was weaving in and out of traffic at high speed. Lugo's car clipped Terrence's automobile, sent it spinning out of control and across the median where it collided in the northbound lanes with a Ford pickup truck driven by James Wendell. Plaintiff saw the collision, stopped his vehicle on the shoulder of the road and went to his brother's aid.
Plaintiff pulled the passenger door open and saw his brother lying on his right side toward the passenger seat with his seat belt buckled. Terrence was breathing erratically but was unresponsive. Plaintiff, a chiropractor, was a former EMT technician. He stabilized his brother's head by holding it in such a way as to *307 maintain an open airway. Plaintiff's right leg was in the passenger compartment of the car and his left foot extended outside the vehicle. He was in a bent position with his back toward the windshield of the car. He continued to hold his brother in this position while efforts were made to extricate Terrence's legs.
EMT rescue units arrived. During the following hour, EMT workers administered IVs and put Terrence in a neck brace. Plaintiff continued to hold his brother's head until he could be placed on a backboard. Proper EMT methodology called for the patient's head to continue to be stabilized by a single person even after the neck brace had been placed on Terrence. Plaintiff assisted the EMT personnel in putting the neck brace on his brother, in coordinating the IV lines and in placing Terrence on the backboard once his legs were free. He covered his brother with his own body when glass was being smashed in order to effect Terrence's rescue. Once extricated, Terrence was treated by the EMT unit for another ten minutes before being airlifted to a trauma center. Terrence was pronounced dead at 8:15 P.M.
As a result of the bent and awkward position maintained by plaintiff for an extended period of time, while partially in and partially out of the vehicle, plaintiff developed pain in his back and between his shoulder blades on the evening of the accident. He subsequently underwent a course of orthopedic treatment. He was also treated by a psychiatrist because of the emotional impact occasioned by his brother's death. Medical benefits for PIP coverage were claimed for both the orthopedic injury and for the psychological injury sustained while watching his brother die.[2]
On appeal, defendants Market Transition Facility of New Jersey by and through its servicing carriers, CSC Insurance Services and Hertz Claim Management, contend that the trial court erred in granting partial summary judgment because plaintiff was not *308 entitled to PIP benefits under N.J.S.A. 39:6A-4. They argue that any injury sustained by plaintiff did not arise out of his use of the automobile nor was he occupying or using the automobile when any injuries were suffered. Defendants contend that plaintiff was not involved in the automobile accident and the remote nature of his involvement was sufficient to exclude him from obtaining PIP coverage. We disagree.
New Jersey's no fault compulsory automobile insurance scheme, found in the New Jersey Automobile Reparation Reform Act, N.J.S.A. 39:6A-1 to 35, must be "liberally construed so as to effect the purpose thereof." N.J.S.A. 39:6A-16. PIP coverage has been characterized as "a social necessity that should be given the broadest application consistent with the statutory language". Amiano v. Ohio Cas. Ins. Co., 85 N.J. 85, 90, 424 A.2d 1179 (1981). A broad application is grounded in a public policy favoring coverage. See, Allstate Ins. Co. v. Malec, 104 N.J. 1, 6, 514 A.2d 832 (1986). Insureds are entitled to coverage in accordance with their objectively reasonable expectations that are supported by any fair interpretation of the law. Westchester Fire Ins. Co. v. Continental Ins. Co., 126 N.J. Super. 29, 36, 312 A.2d 664 (App.Div. 1973), aff'd. o.b. 65 N.J. 152, 319 A.2d 732 (1974). The Legislature has sought to insure the "broadest coverage possible so long as an automobile was involved in that which happened." Pennsylvania Nat'l Mut. Cas. Co. v. Miller Est., 185 N.J. Super. 183, 187, 447 A.2d 1344 (App.Div. 1982).
The Supreme Court recently revisited the issue of PIP eligibility for a pedestrian wounded in a random drive-by shooting in Lindstrom v. Hanover Ins. Co., 138 N.J. 242, 649 A.2d 1272 (1994). In giving the language of N.J.S.A. 39:6A-4 a broad meaning, the Court had this to say:
Although to trigger PIP coverage the automobile must provide more than merely the setting for the accident, no amendment has changed the requirement that the Act be liberally construed to give the broadest application consistent with its language. The guiding principle remains intact: to accommodate the public interest behind the Act, courts must favor the insured and find coverage if possible.
[Lindstrom v. Hanover Ins. Co., supra, 138 N.J. at 249, 649 A.2d 1272.]
*309 The Court went on to note that when applying the substantial nexus test to PIP coverage, the injury producing act need not have been one of negligence. Rather, the act causing the injury does not have to actually be foreseen but must be both a reasonable consequence of the use of an automobile and one against which the parties would expect protection. See, Smaul v. Irvington General Hospital, 108 N.J. 474, 478, 530 A.2d 1251 (1987) (driver stopped to ask for directions and was assaulted by persons who tried to steal his automobile; PIP coverage was available for his injuries).
N.J.S.A. 39:6A-4 provides PIP coverage "to the named insured... who sustained bodily injury as a result of an accident while occupying, entering into, alighting from or using an automobile...." We must determine whether plaintiff was "occupying" an automobile when he came to his brother's aid. In Mondelli v. State Farm Mut. Auto Ins. Co., 102 N.J. 167, 506 A.2d 728 (1986), the Supreme Court interpreted "occupying" in an insurance policy affording uninsured motorist coverage to include a person standing next to and leaning on the roof of his girlfriend's automobile listening to the improved engine sound while she was preparing to drive away when he was struck by a hit and run driver. The connection between the injured plaintiff and the automobile was more than coincidental and the injured boyfriend was deemed eligible for UM coverage through his girlfriend's automobile policy. If "occupying" includes one who leans upon the outside of an automobile in Mondelli for UM coverage, "occupying" is surely broad enough to include for PIP purposes a good samaritan injured while partially inside of an automobile for the purpose of rendering emergency assistance to its injured driver.
Moreover, the test of substantial nexus with the use of an automobile has been met. Plaintiff's presence in the vehicle was not an attending circumstance. Contrast, Kordell v. Allstate Ins. Co., 230 N.J. Super. 505, 554 A.2d 1 (App.Div. 1989), certif. denied, 117 N.J. 43, 563 A.2d 813 (1989) (no accident under N.J.S.A. 39:6A-4 where driver of a pickup suffers a heart attack while *310 stopped at a red light). Here, an automobile accident was directly responsible for plaintiff's presence in the automobile where he was injured. While plaintiff may not have occupied the car when the collision occurred, his occupancy was directly, even foreseeably, attributable to the accident.
The rescue doctrine has long been a part of our State's social fabric. Layden v. Goodyear Tire & Rubber Co., Inc., 129 N.J.L. 54, 58, 28 A.2d 96 (E & A 1942). We recognized this in Cafone v. Spiniello Construction Co., 42 N.J. Super. 590, 602-603, 127 A.2d 441 (App.Div. 1956), certif. denied, 23 N.J. 258, 128 A.2d 753 (1957), when we recalled the words of Justice Cardozo, then Judge of the New York Court of Appeals, in Wagner v. International R. Co., 232 N.Y. 176, 133 N.E. 437 (1921):
Danger invites rescue. The cry of distress is the summons to relief. The law does not ignore these reactions of the mind in tracing conduct to its consequences. It recognizes them as normal. It places their effects within the range of the natural and probable. The wrong that imperils life is a wrong to the imperiled victim; it is a wrong also to his rescuer. The state that leaves an opening in a bridge is liable to the child that falls into the stream, but liable also to the parent who plunges to its aid. Gibney v. State, 137 N.Y. 1, 33 N.E. 142, 19 L.R.A. 365 (1893). The railroad company whose train approaches without signal is a wrongdoer toward the traveler surprised between the rails, but a wrongdoer also to the bystander who drags him from the path. [citing authorities] The risk of rescue, if only it be not wanton, is born of the occasion. The emergency begets the man.
[Wagner v. International R. Co., supra, 232 N.Y. at 179-180, 133 N.E. at 437].
In the traditional tort context, a tort-feasor is liable for injuries to a rescuer on the theory that the tort-feasor places someone in peril and it is foreseeable that others may try to assist that person. Eyrich For Eyrich v. Dam, 193 N.J. Super. 244, 256, 473 A.2d 539 (App.Div. 1984), certif. denied, 97 N.J. 583, 483 A.2d 127 (1984); Harrison v. Middlesex Water Co., 158 N.J. Super. 368, 376, 386 A.2d 405 (App.Div. 1978), rev'd on other grounds, 80 N.J. 391, 403 A.2d 910 (1979). We expect that such rescue responses ordinarily will result in reducing PIP exposures.
We are satisfied that the broad coverage contemplated by the Legislature in effectuating the social purpose of N.J.S.A. 39:6A-4 includes plaintiff within the ambit of those persons entitled to *311 personal injury protection. Plaintiff, therefore, is eligible for PIP benefits.
The order granting partial summary judgment is affirmed.
CONLEY, J.A.D., concurring.
I concur in the result. The sole issue is whether under the particular facts here plaintiff meets the PIP coverage criteria of N.J.S.A. 39:6A-4. I agree that he does. Those facts provide a basis for concluding that he sustained injury while "occupying the vehicle" and that there exists a substantial nexus between his injuries and the use of an automobile. No more need be said. Not everyone who might be a good samaritan attempting to aid a motorist will be entitled to PIP benefits and rescue will not always invite such benefits.
NOTES
[1] The motion judge assumed, incorrectly, that the action was brought against decedent's PIP carrier. However, plaintiff's policy is primary. N.J.S.A. 39:6A-4. Plaintiff, in fact, instituted this action against his own insurer for PIP benefits.
[2] We do not pass on the merits of the Portee v. Jaffee, 84 N.J. 88, 417 A.2d 521 (1980), claim, but only recognize the legal basis upon which plaintiff predicates his injury.