816 A.2d 1087 (2003)
358 N.J. Super. 59
Ismael NEGRON, Plaintiff-Appellant,
v.
COLONIAL PENN INSURANCE a/k/a G.E. Auto Insurance, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Submitted February 13, 2003.
Decided March 6, 2003.
Capizola, Fineman & Lapham, attorneys for appellant (Darrell Fineman, of counsel; Jeannine V. Cavagnaro, Vineland, on the brief).
Margolis Edelstein, attorneys for respondent (Gary Weinberg, Westmont, on the brief).
Before Judges EICHEN, WEISSBARD and LANDAU.
The opinion of the court was delivered by LANDAU, J.A.D., retired and temporarily assigned on recall.
Plaintiff, Ismael Negron, appeals from a Law Division order of April 19, 2002, that granted summary judgment to defendant, Colonial Penn Insurance Co., on his complaint for personal injury protection benefits (PIP) under the New Jersey Automobile Reparation Reform Act, N.J.S.A. 39:6A-1 to -35(Act).
*1088 Negron was a passenger in a vehicle operated by his brother-in-law, Carlos Lucena, when they and another passenger were leaving the parking lot of "Eugene's Bar" at its 2:00 a.m. closing time. The bar featured dancing to Latin music on weekends, and the lot was crowded with departing patrons. There were several disputes ongoing in the lota condition, discovery suggests, that was not unusual as the bar emptied out on weekends.
Viewed most favorably to plaintiff, the proofs showed that after Lucena had backed out of his parking space, a man was standing in front of Lucena's station wagon, blocking its exit. Lucena honked the horn, and the man began pounding on the hood. Lucena left the car, ostensibly to facilitate its movement by addressing the person who was pounding the hood. He was immediately assaulted and knocked down by several people.
In Negron's words, "he was knocked down in the ground, and that's when I opened the door, and I went to help him..." Asked, "[w]hat was your intention in getting out of the car[?]," Negron answered, "[t]o help my brother-in-law." Negron did not remember what happened after he got out of the car. According to eyewitnesses, he was struck violently from the rear on the side of his head by someone wielding an object, possibly a beer bottle. Negron sustained serious injuries.
One witness said Negron had gone around to the back of the vehicle before he was hit. Another witness, the second passenger of the Lucena vehicle, described it this way:
The first one that got hit was Carlos. Seconds. Ismael was with Carlos in the car. Carlos [sic] opened the door and when he seen Carlos was on the floor that's why he went to find out what's going on. He went around the car and this other guy came at him with a bottle. Boom. That's it.
As amended at the time of the March 1999 injury, N.J.S.A. 39:6A-4 required that automobile insurance policies,
shall contain personal injury protection benefits for the payment of benefits without regard to negligence, liability or fault ... to ... persons sustaining bodily injury while occupying, entering into, alighting from or using the automobile of the named insured, with permission of the named insured ...
The motion judge concluded that the record presented a situation where the plaintiff's purpose in exiting the vehicle was to help his brother-in-law who had been injured in a fight. Relying primarily upon our opinion in Vasil v. Zullo, 238 N.J.Super. 572, 570 A.2d 464 (App.Div. 1990), the judge reasoned that, however commendable, such purpose was not sufficiently "entwined with normal use" of a vehicle to bring this case within the ambit of PIP coverage.
Negron argues on appeal that a passenger who goes to the aid of a driver who has been attacked while protecting or clearing the path of an automobile is entitled to PIP benefits.
A substantial body of case law has developed concerning the statutory words "occupying... or using" an automobile in the context of eligibility for PIP benefits. The broad principle developed by case law has been summarized with disarming simplicity in Craig & Pomeroy, New Jersey Auto Insurance Law, § 6:2-3, pg. 119 (Gann 2003):
[I]t is not necessary that the injury be directly or proximately caused by the automobile or by its motion or operation, so long as there is a substantial nexus between the occupancy or use of the vehicle and the injury.
Cases considering the issue of substantial nexus in PIP matters were surveyed in Lindstrom v. Hanover Ins. Co., 138 N.J. *1089 242, 247-53, 649 A.2d 1272 (1994). More recent cases, like Ohio Casualty Group v. Gray, 323 N.J.Super. 338, 732 A.2d 1145 (App.Div.1999); Svenson v. National Consumer Ins. Co., 322 N.J.Super. 410, 413-17, 731 A.2d 91 (App.Div.1999); and Stevenson v. State Farm Indemnity Co., 311 N.J.Super. 363, 372-73, 709 A.2d 1359 (App.Div.1998), have addressed the issue with similar surveys.
In support of his argument on appeal, Negron urges that his actions were directly linked to the use of the automobile in which he was traveling because he was acting to aid the driver of his car, to clear a path of travel and to stop third parties from damaging the vehicle. He invokes particularly Smaul v. Irvington General Hosp., 108 N.J. 474, 477, 530 A.2d 1251 (1987); Ohio Casualty Group, supra; and Vicari v. Nationwide Ins., 174 N.J.Super. 463, 416 A.2d 977 (App.Div.), certif. denied, 85 N.J. 464, 427 A.2d 562 (1980).
We have considered the above cases, along with our decision in Burns v. Market Transition Facility of N.J., 281 N.J.Super. 304, 657 A.2d 472 (App.Div.1995), where PIP coverage was afforded to a good Samaritan injured while partially inside an automobile for the purpose of rendering emergency assistance to its injured driver.
The Supreme Court was careful in Lindstrom to recognize that N.J.S.A. 39:6A-4 was not designed to function as general crime insurance, and that its ruling in that case was not applicable to cases where other circumstances intervene between use of the vehicle and a criminal act of violence. Lindstrom, supra, 138 N.J. at 253, 649 A.2d 1272. This distinction appears to have been anticipated in Vasil, supra, 238 N.J.Super. at 577, 570 A.2d 464, and recognized by Judge Curio in her oral decision on the motion. The judge pointed out that Negron's stated purpose was to assist his brother-in-law who had been knocked to the ground.
We find nothing in the record to support the factual contention made on appeal that Negron left the car for the purpose of clearing a path or assessing damage done to the vehicle. The requisite substantial nexus is absent because of the intervening circumstances that prompted Negron's departure from the vehicle.
It also appears to be suggested on appeal that, as Lucena was injured while arguably still in occupancy or in use of the vehicle because of a purpose to clear a passage free of the obstructing individual, Negron's attempt to render aid to his injured brother-in-law (who was then outside of the car) should be deemed to acquire the aura of occupancy or use surrounding Lucena.
This stretches the liberal-construction mandate of N.J.S.A. 39:6A-16 beyond existing case law and, we think, beyond the purposes of the Act.
As observed by the concurring judge in Burns, "[n]ot everyone who might be a good Samaritan attempting to aid a motorist will be entitled to PIP benefits and rescue will not always invite such benefits." Burns, supra, 281 N.J.Super. at 311, 657 A.2d 472. (Conley, J., concurring).
Among the purposes of the Act was an effort to address premium cost reduction. The latter legislative objective has been re-emphasized by adoption of the Automobile Insurance Cost Reduction Act, L. 1998, c. 21, amendments to the no-fault laws. Extension of the nexus rationale beyond present boundaries cannot be calculated to lower premium costs.
Affirmed.